**Randall C. SCARBOROUGH, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 00–7172.

United States Court of Appeals, Federal Circuit.

Feb. 13, 2003.

Brian Wolfman, Public Citizen Litigation Group, of Washington, DC, for claimant-appellant. Of counsel on the brief was Peter J. Sarda, Wallace, Creech & Sarda, L.L.P., of Raleigh, NC.

Joseph Trautwein, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Michelle Doses Bernstein, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, RADER, and LINN, Circuit Judges.

Opinion of the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge MAYER.

LINN, Circuit Judge.

Randall C. Scarborough ("Scarborough") appeals from a dismissal by the United States Court of Appeals for Veterans Claims ("Veterans' Court") for lack of subject matter jurisdiction over his application for attorney fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2000). On December 10, 2001, this court entered judgment affirming the dismissal by the Veterans' Court because Scarborough's fee application failed to comply with the jurisdictional prerequisites of the EAJA statute. *Scarborough v. Principi*, 273 F.3d 1087 (Fed.Cir. 2001). Scarborough petitioned for review by the Supreme Court, and on June 17, 2002, the Court granted certiorari, vacated our decision, and remanded the case to this court for consideration in light of *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). *Scarborough v. Principi*, — U.S. —, 122 S.Ct. 2584, 153 L.Ed.2d 774 (June 17, 2002).

Following remand from the Supreme Court, this court's mandate was vacated, the case was returned to the panel, and we requested additional briefing from the parties regarding the applicability of *Edelman* to the current case. *Scarborough v. Principi*, 47 Fed.Appx. 931 (Sept. 18, 2002). Based on the Supreme Court's instruction and the supplemental briefing from the parties, we have reconsidered this case and, once again, affirm the decision of the Veterans' Court, dismissing Scarborough's EAJA application for lack of subject matter jurisdiction.

## BACKGROUND

After prevailing in the underlying litigation, but before the Veterans' Court entered its mandate, Scarborough submitted an application for attorney fees and expenses to the Veterans' Court under the EAJA, 28 U.S.C. § 2412(d). On October 4, 1999, following the issuance of the mandate, the clerk of the Veterans' Court filed Scarborough's EAJA application. The application contained a showing that: (1) Scarborough was the prevailing party pursuant to the July 1999 remand order; (2) his net worth did not exceed the $2,000,000.00 limit for filing under the EAJA; (3) his attorney had represented him in the matter since August 1998; and (4) the attorney had incurred fees and expenses during his representation of the appellant, as detailed in an attachment to the application.

On December 3, 1999, the Government filed a motion to dismiss the EAJA application for lack of subject matter jurisdiction. The Government argued that Scarborough had failed to satisfy all of the jurisdictional requirements under the EAJA statute because the application was missing an allegation that the Government's position in the underlying litigation lacked substantial justification. On December 9, 1999, Scarborough responded by filing an amendment to his EAJA application, supplying the previously omitted allegation that the Government's position lacked substantial justification.

The Veterans' Court examined the EAJA statute and held that each of the required parts of an EAJA fee application was a jurisdictional requirement that must be met within the thirty-day filing period, including the requirement that the applicant allege that the Government's position is "not substantially justified." *See* 28 U.S.C. § 2412(d)(1)(B) (2000). The Veterans' Court then dismissed Scarborough's EAJA application for lack of subject matter jurisdiction based on Scarborough's failure to allege, within the thirty-day filing period, that the Government's position was not substantially justified. *Id.* This appeal followed. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

### A. Standard of Review

In reviewing decisions of the Veterans' Court, this court "shall decide all relevant questions of law, including interpreting ... statutory provisions." 38 U.S.C. § 7292(d)(1) (2000); *Forshey v. Principi,* 284 F.3d 1335, 1351–52 (Fed.Cir.2002) (*en banc*). This court reviews an interpretation of statutory provisions by the Veterans' Court without deference. *Jones v. Brown,* 41 F.3d 634, 637 (Fed.Cir.1994).

### B. Analysis

■ "The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity." *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). Such a waiver "must be strictly construed in favor of the United States," *id.,* and "not enlarged beyond what the language requires." *United States v. Nordic Vill.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (citation omitted). Once the government provides the waiver, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). We must, however, take care not to "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

In this case, the terms of the waiver are contained in the EAJA statute. That statute specifies that an applicant for an award of fees "shall," within thirty days of final judgment in the action, submit an application:

> (1) showing that the applicant is a "prevailing party;"
> (2) showing that the applicant "is eligible to receive an award;"
> (3) showing "the amount sought," together with an itemization in support thereof; and
> (4) alleging that the position of the United States "was not substantially justified."

28 U.S.C. § 2412(d)(1)(B) (2000); *Singleton v. Apfel*, 231 F.3d 853, 857 (11th Cir. 2000). The specific provision of the EAJA at the heart of this case states that:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(B) (2000).

 "[T]he starting point in every case involving construction of a statute is the language itself." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). We first examine the language to determine the plain meaning of the words used by Congress. *Bazalo v. West*, 150 F.3d 1380, 1382 (Fed.Cir.1998). In the absence of a clearly expressed legislative intention to

the contrary, the statutory language must ordinarily be regarded as conclusive. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). "If the statute is clear and unambiguous, that is the end of the matter, for the court ... must give effect to the unambiguously expressed intent of Congress." *Sullivan v. Stroop*, 496 U.S. 478, 482, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (citation omitted). However, "where the text itself does not clearly exclude alternate interpretations, we look first to the legislative history for illumination of the intent of Congress." *Deluxe Corp. v. United States*, 885 F.2d 848, 850 (Fed.Cir.1989) (citing *Shriners Hosps. v. United States*, 862 F.2d 1561, 1563 (Fed.Cir.1988)).

Here, the EAJA specifies that a party seeking an award of fees shall submit an application within the thirty-day time limit. 28 U.S.C. § 2412(d)(1)(B). The application must include each of the four requirements set forth in the statute. *Id.* The same mandatory language ("shall") is used with respect to the thirty-day time limit and the other four requirements that make up the application. *Id.* This court and five other U.S. Courts of Appeals have characterized the thirty-day time limit for submitting a fee application under the EAJA as jurisdictional in nature. *See Bazalo*, 150 F.3d at 1383; *J.M.T. Mach. Co. v. United States*, 826 F.2d 1042, 1047 (Fed.Cir.1987); *see also Yang v. Shalala*, 22 F.3d 213, 215 n. 4 (9th Cir.1994); *Newsome v. Shalala*, 8 F.3d 775, 777 (11th Cir.1993); *Damato v. Sullivan*, 945 F.2d 982, 986 (7th Cir.1991); *Welter v. Sullivan*, 941 F.2d 674, 675 (8th Cir.1991); *Peters v. Sec'y of HHS*, 934 F.2d 693, 694 (6th Cir.1991).

The issue in this appeal is whether the fourth requirement of the EAJA statute, that "the party shall also allege that the position of the United States was not sub-

stantially justified," must be satisfied within the thirty-day period or may be satisfied at some later time and relate back to the timely filing of an incomplete application. The general question of whether the individual requirements of the EAJA statute are jurisdictional and must be satisfied within the thirty-day period was addressed in a number of cases decided by other Courts of Appeals and by this court in *Bazalo*. The Third Circuit in *Dunn v. United States*, 775 F.2d 99 (3d Cir.1985), found that a failure to itemize the amount sought under the EAJA may be corrected after the thirty-day time limit if no prejudice to the Government arises. *Id.* at 103. In a class action suit against several federal agencies involving radiation contamination by a uranium processing site, Dunn and the other named plaintiffs submitted an EAJA application that made the proper allegations that plaintiffs were prevailing parties and were eligible to receive a fee award, and that the position of the United States was not substantially justified. *Id.* at 100–01. However, the application failed to state the amount sought or to include an itemized statement of the actual time expended and the rate at which the expenses were computed. *Id.* at 101. The court held that as long as the EAJA application was filed within the thirty-day time limit, the application may be supplemented or corrected after the thirty-day period, provided that the Government was not prejudiced by the defect. *Id.* at 104.

The majority opinion in *Dunn* in effect cleaved § 2412(d)(1)(B) into two distinct components, a filing deadline and a standard for pleading:

> Requiring the filing of a fee claim (or any other) with the court ... serves the purpose of establishing a means certain for proving compliance with a time bar. Such certainty is required in most situations in the interest of finality and reliance. But once the claim is filed, whether or not it is as complete as it should

be, the interests of proof of timeliness and of finality and reliance have been satisfied. What remains is the fleshing out of the details....

*Dunn*, 775 F.2d at 103–04.

The Eleventh Circuit in *Singleton* adopted the reasoning of *Dunn* and likewise found that an EAJA application may be supplemented after the thirty-day time limit to satisfy the requirements regarding net worth and the Government's position being "not substantially justified." *Singleton*, 231 F.3d at 858. The class action plaintiffs in *Singleton* challenged a policy of the Social Security Administration ("SSA") involving payment of retroactive disability benefits in "random" fashion, resulting in the loss of Medicaid benefits for plaintiffs in certain states. *Id.* at 854. After the SSA reversed its policy and the court remanded for a determination of retroactive benefits due, the plaintiffs filed an application under the EAJA which arguably failed to allege that the plaintiffs met the net worth requirement and that the United States' position in the district court was not substantially justified. *Id.* at 855, 857. The court found that a timely EAJA fee application may be supplemented to meet the requirements of § 2412(d)(1)(B), but that district courts may "order rapid completion of the application or outright deny a request to supplement if the government would be prejudiced." *Id.* at 858. The court in *Singleton* stated:

> While it appears clear from the legislative history that Congress intended the filing requirement to be jurisdictional, it is far from apparent that Congress intended that "strict compliance with the pleading requirements must be accomplished within the same time as filing."

*Id.* (quoting *Dunn*, 775 F.2d at 103).

Both *Singleton* and *Dunn* venture beyond the plain language of the EAJA statute to consider underlying interests in

finality and reliance as well as the legislative history. *See id.; Dunn,* 775 F.2d at 103–04. However, the legislative history, as cited by these cases, is not very enlightening. *See Singleton,* 231 F.3d at 858 ("While it appears clear from the legislative history that Congress intended the filing requirement to be jurisdictional, *it is far from apparent* that Congress intended that 'strict compliance with the pleading requirements must be accomplished within the same time as filing.'" (*quoting Dunn,* 775 F.2d at 103) (emphasis added)).

 We read the plain language of the EAJA statute to require not only that an application be filed by the thirty-day deadline, but that it contain averments addressing each of the four other requirements enumerated in the statute. 28 U.S.C. § 2412(d)(1)(B) (2000). Use in the statute of the same mandatory language with respect to the thirty-day deadline and each of the four enumerated application requirements indicates that all of the requirements must be addressed, if not satisfied, within thirty days in order for a court to assert jurisdiction. While we interpret the statute to require that the application address each of the requirements of the EAJA within the thirty-day period, the statutory language does not mandate strict compliance or foreclose supplementation where the details of the stated jurisdictional averments remain to be fleshed out or corrected. When the application completely fails to address one of the four statutory requirements by the thirty-day deadline, however, more than a "fleshing out of the details" remains and the application will be jurisdictionally defective.

In *Bazalo,* we held that the applicant satisfied the jurisdictional eligibility requirement by asserting he was a prevailing "party" entitled to an award in his EAJA application. 150 F.3d at 1383. Because his initial application satisfied the jurisdictional eligibility requirement, as well as all of the other jurisdictional requirements, this court gave Bazalo some latitude to supplement his application to flesh out the missing details of his net worth. *Id.* at 1383–84. Citing *Dunn,* the opinion in *Bazalo* stated that "[w]e agree with the Third Circuit that while the time limitation should be strictly met, the content of the EAJA application should be accorded some flexibility." *Id.* at 1383.

In contrast to *Dunn* and *Singleton,* this court, in *Bazalo,* recognized that the EAJA statute contains "jurisdictional prerequisites" (plural). *Id.* at 1384 (emphasis added). We initially distinguished a "requirement" of the EAJA from a "jurisdictional prerequisite," and quoted *Dunn's* explication of the finality and reliance justifications for making such a distinction. *Id.* at 1383. However, we stopped short of adopting the holding of *Dunn,* instead both recognizing and analyzing as "jurisdictional requirements" and "jurisdictional prerequisites" each of the provisions of the fee application specified by the plain language of the EAJA and at the same time according fee applicants some latitude to provide details where a required averment may be less than fully explicated. *Id.* at 1383–84.

After enumerating the contents of Bazalo's EAJA application, including each of the four requirements of § 2412(d)(1)(B), we began our analysis by acknowledging that Bazalo had timely "met the *jurisdictional requirements* of the EAJA statute" and concluded by reiterating "that Bazalo's application of attorney fees and expenses met the *jurisdictional prerequisites* of the EAJA statute." *Id.* at 1383–84 (emphasis added). The requirements of the EAJA statute were recognized to include a showing that the applicant was a prevailing party, a showing that the applicant was eligible for an award, an allegation that the

position of the United States was not substantially justified, and an itemized statement of fees sought. *Id.* The eligibility requirement, the details of which were initially lacking, was both identified as a "jurisdictional requirement" and found to have been met by Bazalo in his initial application. *Id.* What was left was simply a fleshing out of the details of his net worth.

Although this court has characterized the four requirements of an EAJA application to be jurisdictional, we have recognized that details relating to the requirements may be "fleshed out" after the thirty-day deadline in certain circumstances. In this case, Scarborough argues that the fourth requirement itself—the allegation of a lack of substantial justification—should be considered separately from the other requirements and need not be alleged at all before the deadline. In accordance with the Supreme Court's remand of the present case for further review in light of *Edelman,* we reconsider whether the failure to comply with the requirement to allege lack of substantial justification within the thirty-day deadline is fatal to an EAJA application, or whether the applicant is permitted to supplement his application to include the missing allegation after the deadline and to have it relate back to the timely filed, but incomplete, original application.

The *Edelman* case did not involve an EAJA application, but rather a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 ("Civil Rights Act"). After being denied academic tenure at Lynchburg College, Mr. Edelman timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging gender-based discrimination, exacerbated by discrimination on the basis of national origin and religion. Section 706(b) of the Civil Rights Act requires charges to "be in writing under oath or affirmation ... containing such infor-

mation and ... in such form as the Commission requires." *Id.* § 2000e–5(b). Section 706(e)(1) provides that "a charge shall be filed within one hundred and eighty [or in some cases, three hundred] days after the alleged unlawful employment practice occurred." *Id.* § 2000e–5(e)(1). Although Mr. Edelman's charge initially did not include an oath or affirmation, he supplemented his original submission by filing a verified form approximately two weeks after the deadline. The district court dismissed the case, concluding that because Mr. Edelman's initial filing did not include an oath, it was not a "charge" under section 706 and the late-filed verified form could not relate back to and provide Mr. Edelman with a timely filing date. The Court of Appeals for the Fourth Circuit affirmed, interpreting sections 706(b) and 706(e)(1) of the Civil Rights Act in tandem to require that the charge must be verified within the specified time period. The Supreme Court disagreed.

In reversing the decision of the district and appellate courts, the Supreme Court reasoned that the purposes behind the verification requirement and the timeliness requirement were quite different. 122 S.Ct. at 1149. The Court held that while the timeliness requirement encourages prompt filing of claims and speedy resolution of discriminatory behavior, the verification requirement protects employers from frivolous claims. *Id.* The Court analogized the situation in the *Edelman* case to *Becker v. Montgomery,* 532 U.S. 757, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001), in which the Supreme Court held that "while the timing and content requirements [for filing a notice of appeal under Rule 3 of the Federal Rules of Appellate Procedure] were 'jurisdictional in nature,' nothing prevented later cure of the [Rule 11 of the Federal Rules of Civil Procedure] signature defect." *Edelman,* 122 S.Ct. at 1151 (*citing Becker,* 532 U.S. at 765, 121 S.Ct.

1801). The Court noted that both the verification requirement of *Edelman* and the signature requirement of *Becker* were aimed at stemming irresponsible litigation, and as such, concluded that it is not unreasonable to permit relation-back of a late-filed oath or signature to a timely-filed complaint or charge. *Edelman,* 122 S.Ct. at 1151.

The present case is distinguishable from *Edelman* and *Becker.* First, the statute at issue in *Edelman* is "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Id.* at 1150 (*quoting EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 124, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)). *Edelman*'s permissive relation back of the verification requirement "ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently." *Id.*[1] The EAJA statute, however, is directed to attorneys seeking attorney fees. As such, this paternalistic protection is not required.

Second, the two requirements in *Edelman*—namely the timely filing of the charge and the verification—are contained in separate statutory provisions held not interdependent. 42 U.S.C. § 2000e–5(b); *id.* § 2000e–5(e)(1). Similarly, in *Becker,* the Supreme Court differentiated between the content and timing of a notice of appeal on the one hand and the signature requirement on the other, and noted that they are found in separate rules. Fed. R.App. P. 3(a)(1) (requiring that a notice of appeal be filed within thirty days); Fed. R.App. P. 3(c)(1) (listing the content requirements of a notice of appeal); Fed. R.Civ.P. 11(a) (requiring that every filing bear the signature of an attorney of rec-

ord or the party, if unrepresented). Because the verification and signature requirements are not present in the same statutory provisions and their purposes are different, the Court divorced these requirements from the timeliness requirement in each case. *See, e.g., Becker,* 532 U.S. at 766, 121 S.Ct. 1801 ("[A] signature requirement is not among Rule 3(c)(1)'s specifications, for Civil Rule 11(a) alone calls for and controls that requirement and renders it nonjurisdictional.") In the present case, the situation is antithetical. The allegation of lack of substantial justification is part of the single statutory provision detailing both the contents required for an EAJA application and the requirement that the application be filed within thirty days. Moreover, the allegation of a lack of substantial justification is not a pro forma requirement, but rather requires an applicant to analyze the case record. 28 U.S.C. § 2412(d)(1)(B) ("Whether or not the position of the United States was substantially justified shall be determined on the basis of the record....").

Third, the purpose of the fourth requirement of an EAJA application is not different than the other three requirements, unlike the verification of *Edelman* or the signature of *Becker.* The allegation that the government was not substantially justified is not simply a tool to weed out frivolous claims, but rather is one portion of the basis of the award itself. *See, e.g., Comm'r, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 165, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ("The 'substantial justification' requirement of the EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that properly focuses on the

---

1. The dissent implies that requiring statutory compliance of the attorneys seeking attorney fees under EAJA would deter the vindication of one's rights. However, the goal of EAJA, to encourage claims against improper govern-

ment action, is not and should not be dependent upon relaxed standards of statutory compliance coming not at the beginning of the process, but after the fact.

governmental misconduct giving rise to the litigation."). *Jean* thus informs the jurisdictional nature of the allegation of a lack of substantial justification in describing that it "operates as a one-time threshold for fee eligibility." *Id.* at 160. After satisfying the four requirements of the EAJA application, only then does the court have jurisdiction to determine what fee award is reasonable. *Id.* at 160–61, 110 S.Ct. 2316.

The legislative history tags the lack of substantial justification allegation as a burden-shifting statute. S.Rep. No. 96–974, at 10 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4726, 4989 (stating that the allegation is intended "to place the burden on the government to make a positive showing that its position and actions during the course of the proceedings were substantially justified"). This, however, is belied by the plain language of the EAJA statute itself:

> Except as otherwise specifically provided by statute, a court *shall* award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). Whether or not the allegation is made, the burden is always on the United States to assert the defense that it was substantially justified if it seeks to avoid an award of fees to the prevailing party. The brief commentary on burden-shifting in the legislative history is not helpful given the plain language of the statute itself.

For the reasons set forth above, we conclude that the allegation of a lack of substantial justification is a jurisdictional requirement of the EAJA statute that must be met within the specified thirty-day time period. To allow otherwise is contrary to the strict construction of the language of the statute required in cases of waiver of sovereign immunity. The averment is a substantive requirement that is not so easily divorced from the remaining requirements and accompanying thirty-day deadline, both set forth in the same statutory provision. Moreover the purpose of the allegation is the same as for the other three requirements—to provide a threshold for fee determination. For these reasons, the allegation of a lack of substantial justification is more akin to insufficient content than the lacking signature in *Becker. Edelman,* 122 S.Ct. at 1151 ("We held that while the timing and *content* requirements for the notice of appeal were 'jurisdictional in nature,' nothing prevented later cure of the signature defect." (*citing Becker,* 532 U.S. at 765, 121 S.Ct. 1801) (emphasis added)).

Because the allegation of no substantial justification is a jurisdictional requirement, the remaining question is whether the failure to so allege is fatal to an EAJA application. In this respect, this case is analogous to *Smith v. Barry,* 502 U.S. 244, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992), and *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). In *Torres,* a notice of appeal in an employment discrimination suit omitted the petitioner's name due to a clerical error. The case was remanded by the Ninth Circuit back to the district court, where Oakland moved for partial summary judgment on the ground that the prior judgment was final as to the petitioner by virtue of his failure to appeal. The district court granted the motion and the appeals court affirmed. The Supreme Court granted certiorari to determine whether failure to file a notice of appeal in accordance with Rule 3(c) was a jurisdictional bar to the appeal. Fed. R.App. P. 3(c). In affirming the lower courts, the Supreme

Court noted that the "failure to name a party in a notice of appeal is more than an excusable 'informality.'" *Torres,* 487 U.S. at 314, 108 S.Ct. 2405. Moreover, the Court stated that "[p]ermitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a jurisdictional threshold." *Id.* at 315–16, 108 S.Ct. 2405. The Court had previously held that the filing requirements of Rule 3 were jurisdictional, based on a plain reading of the rule and the purpose as a threshold to appeal. *See, e.g., United States v. Robinson,* 361 U.S. 220, 224, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960) (*cited by Torres,* 487 U.S. at 315, 108 S.Ct. 2405).

Similarly, Scarborough's failure to allege a lack of substantial justification is not "an excusable informality" nor is it "imperfect but substantial compliance." Scarborough's application was instead completely devoid of a jurisdictional requirement. The required allegation of lack of substantial justification calls for substantive content, similar to the content requirements contemplated in Rule 3(c). This notion is further supported by the *Smith* case.

In *Smith,* the named appellant appealed a district court's dismissal of his action against Barry under 42 U.S.C. § 1983. While a motion for judgment as a matter of law was pending, Smith filed a premature notice of appeal. After a ruling on the motion for judgment as a matter of law, Smith filed an informal appeal brief within the deadline for filing a notice of appeal. The Court of Appeals for the Fourth Circuit dismissed Smith's appeal for lack of jurisdiction, holding that the notice of appeal was premature and that the informal brief was not a functional equivalent of the notice of appeal as required by Rule 3. Fed. R.App. P. 3(c). The Supreme Court granted certiorari to determine whether an appellate brief may serve as a notice of appeal. In remanding the case to the Court of Appeals to determine whether the informal brief included sufficient information as required by Rule 3(c), the Supreme Court cited *Torres* and concluded that "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review," and further noted that "noncompliance is fatal to an appeal." *Smith,* 502 U.S. at 248, 112 S.Ct. 678.

The present case is not an instance of substantial compliance with a technical requirement, but rather, absolute noncompliance with a jurisdictional threshold. Noncompliance is fatal. Scarborough is not seeking to merely "flesh out the details" of an otherwise complete application. Rather, he is seeking to add an entirely missing averment that is a jurisdictional requirement. Because he sought to add this averment after the expiration of the thirty-day deadline, his attempt to remedy the jurisdictional defect was untimely.

### CONCLUSION

For the foregoing reasons, the dismissal by the Veterans' Court of Scarborough's EAJA application for attorney fees and expenses for lack of subject matter jurisdiction is

*AFFIRMED.*

MAYER, Chief Judge, dissenting.

Because I believe that: (1) *Edelman v. Lynchburg College,* 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), implies that failure to timely include a simple allegation that does not prejudice the opposing party, may relate back to a timely filed application; (2) the court unnecessarily narrows the waiver that Congress intended because the statutory language of the Equal Access to Justice Act ("EAJA") does not mandate strict compliance or foreclose supplementation; and (3) *Bazalo v. West,* 150 F.3d

1380 (Fed.Cir.1998), controls the outcome of this case, I dissent.

The "no substantial justification" allegation in the EAJA application is akin to the verification requirement of *Edelman* and the signature requirement of *Becker v. Montgomery,* 532 U.S. 757, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001). The Court noted in those cases, respectively, that both the verification and signature requirements are aimed at stemming irresponsible litigation. Similarly, the no substantial justification allegation of EAJA serves a public policy function; it is a burden-shifting mechanism to offset deterrents to contesting government action. The legislative history pointedly reveals that this simple allegation was included "to place the burden on the government to make a positive showing that its position and actions during the course of the proceedings were substantially justified...." S.Rep. No. 96–974, at 10 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4726, 4992. Congress recognized that this standard struck a balance between the executive branch's duty to observe that the laws are faithfully executed and the public interest in encouraging parties to vindicate their rights. *Id.* at 4989. The legislative history further explains that the standard was implemented because it is easier for the government, controller of the evidence, to establish the reasonableness of its action versus a private party. *Id.* Moreover, failure to include the simple allegation within the thirty-day time period does not prejudice the government's response to the application. And the applicant need not marshal the facts to determine if the government's position was substantially justified. *Comm'r, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ("Moreover, the 1985 amendment to § 2412(d)(1)(B) directs a court to determine whether the Government's past position was substantially justified 'on the basis of the record....'"

(Pub.L. No. 99–80, 99 Stat. 184–185, § 2(b) (codified as amended at 28 U.S.C. § 2412(d)(1)(B)))).

The objective of EAJA is to eliminate the financial disincentive for those who would defend against unjustified governmental action and thereby deter it. *Jean,* 496 U.S. at 163, 110 S.Ct. 2316. In light of this and *Bazalo, Becker,* and *Edelman,* it is apparent that Congress did not intend the EAJA application process to be an additional deterrent to the vindication of rights because of a missing averment.

EAJA is a waiver of sovereign immunity and therefore must be strictly construed. But we must take care not to "assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). By holding that failure to include the "no substantial justification" allegation within the thirty-day filing requirement is an incurable jurisdictional requirement, the court indulges an "unduly restrictive" reading of the congressional waiver of sovereign immunity, *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), rather than "a realistic assessment of legislative intent," *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). In my view this is substantially the same case as *Bazalo,* which I would follow.