SCARBOROUGH *v.* PRINCIPI, SECRETARY OF
VETERANS AFFAIRS

No. 02–1657.   Argued February 23, 2004—Decided May 3, 2004

402

*Brian Wolfman* argued the cause for petitioner. With him on the briefs were *Scott L. Nelson, Alan B. Morrison,* and *Peter J. Sarda.*

*Jeffrey P. Minear* argued the cause for respondent. On the brief were *Solicitor General Olson, Assistant Attorney General Keisler, Deputy Solicitor General Clement, Austin C. Schlick, William Kanter, August E. Flentje,* and *Tim S. McClain.*

JUSTICE GINSBURG delivered the opinion of the Court.

The Equal Access to Justice Act (EAJA or Act) departs from the general rule that each party to a lawsuit pays his or her own legal fees. See *Alyeska Pipeline Service Co.* v.

*Wilderness Society,* 421 U. S. 240, 257 (1975). Relevant here, EAJA authorizes the payment of fees to a prevailing party in an action against the United States; the Government may defeat this entitlement by showing that its position in the underlying litigation "was substantially justified." 28 U. S. C. § 2412(d)(1)(A). In a further provision, § 2412(d)(1)(B), the Act prescribes the timing and content of applications seeking fees authorized by § 2412(d)(1)(A). Section 2412(d)(1)(B) specifies as the time for filing the application "within thirty days of final judgment in the action." In the same sentence, the provision identifies the application's contents, in particular, a showing that the applicant is a "prevailing party" who meets the financial eligibility condition (in this case, a net worth that "did not exceed $2,000,000 at the time the . . . action was filed," § 2412(d)(2)(B)); and a statement of the amount sought, with an accompanying itemization. The fee application instruction adds in the next sentence: "The [applicant] shall also allege that the position of the United States was not substantially justified."

Petitioner Randall C. Scarborough was the prevailing party in an action against the Department of Veterans Affairs for disability benefits. His counsel filed a timely application for fees showing Scarborough's "eligib[ility] to receive an award" and "the amount sought, including [the required] itemized statement." § 2412(d)(1)(B). But counsel failed initially to allege, in addition, that "the position of the United States was not substantially justified." Pointing to that omission, the Government moved to dismiss the fee application. Scarborough's counsel immediately filed an amended application adding that the Government's opposition to the underlying claim for benefits "was not substantially justified." In the interim between the initial filing and the amendment, however, the 30-day fee application filing period had expired. For that sole reason, the United States Court of Appeals for Veterans Claims granted the Government's

motion to dismiss the application and the Federal Circuit affirmed that disposition.

Scarborough's petition for certiorari presents this question: May a timely fee application, pursuant to §2412(d), be amended after the 30-day filing period has run to cure an initial failure to allege that the Government's position in the underlying litigation lacked substantial justification? We hold that a curative amendment is permissible and that Scarborough's fee application, as amended, qualifies for consideration and determination on the merits.

## I

### A

Congress enacted EAJA, Pub. L. 96–481, Tit. II, 94 Stat. 2325, in 1980 "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." H. R. Rep. No. 96–1005, p. 9; see Congressional Findings and Purposes, 94 Stat. 2325, note following 5 U. S. C. §504 ("It is the purpose of this title . . . to diminish the deterrent effect of seeking review of, or defending against, governmental action . . . ."). Among other reforms, EAJA amended 28 U. S. C. §2412, which previously had authorized courts to award costs, but not attorney's fees and expenses, to prevailing parties in civil litigation against the United States. EAJA added two new prescriptions to §2412 that expressly authorize attorney's fee awards against the Federal Government. First, §2412(b) made the United States liable for attorney's fees and expenses "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Second, §2412(d) rendered the Government liable for a prevailing private party's attorney's fees and expenses in cases in which suit would lie only against the United States or an

agency of the United States. This case concerns the construction of § 2412(d).

Congress initially adopted § 2412(d) for a trial period of three years, Pub. L. 96–481, § 204(c); in 1985, Congress substantially reenacted the measure, this time without a sunset provision, Pub. L. 99–80, 99 Stat. 183. See *id.*, § 6(b)(2), 99 Stat. 186. Congress' aim, in converting § 2412(d) from a temporary measure to a permanent one, was "to ensure that certain individuals, partnerships, corporations . . . or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." H. R. Rep. No. 99–120, p. 4.

Section 2412(d) currently provides, in relevant part:

"(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a),[1] incurred by that party in any civil action (other than cases sounding in tort), . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness . . . stating the actual time expended and the rate at which fees and other expenses were computed. The party

---

[1] Subsection (a) states: "Except as otherwise specifically provided by statute, a judgment for costs . . . may be awarded to the prevailing party in any civil action brought by or against the United States . . . in any court having jurisdiction of such action." § 2412(a)(1).

shall also allege that the position of the United States was not substantially justified."

Section 2412(d)(1)(A) thus entitles a prevailing party to fees absent a showing by the Government that its position in the underlying litigation "was substantially justified," while § 2412(d)(1)(B) sets a deadline of 30 days after final judgment for the filing of a fee application and directs that the application shall include: (1) a showing that the applicant is a prevailing party; (2) a showing that the applicant is eligible to receive an award (in Scarborough's case, that the applicant's "net worth did not exceed $2,000,000 at the time the civil action was filed," § 2412(d)(2)(B)); and (3) a statement of the amount sought together with an itemized account of time expended and rates charged. The second sentence of § 2412(d)(1)(B) adds a fourth instruction, requiring the applicant simply to "allege" that the position of the United States was not substantially justified.

## B

On July 9, 1999, petitioner Scarborough, a United States Navy veteran, prevailed before the Court of Appeals for Veterans Claims (CAVC) on a claim for disability benefits. App. to Pet. for Cert. 41a–44a. Eleven days later, Scarborough's counsel applied, on Scarborough's behalf, for attorney's fees and costs pursuant to § 2412(d). App. 4–5. Scarborough himself would gain from any fee recovery because his lawyer's statutory contingent fee, ordinarily 20% of the veteran's past-due benefits, 38 U. S. C. § 5904(d)(1), would be reduced dollar for dollar by an EAJA award. See Federal Courts Administration Act of 1992, 106 Stat. 4513, Fee Agreements, note following 28 U. S. C. § 2412; Tr. of Oral Arg. 6.[2]

---

[2] The same reduction applies in Social Security cases, see Pub. L. 99–80, § 3, 99 Stat. 186, which account for the large majority of EAJA awards. L. Mecham, Annual Report of the Director of the Administrative Office of the United States Courts 35–37 (1990).

The Clerk of the CAVC returned Scarborough's initial fee application on the ground that it was filed too soon. App. 6–7. After the CAVC issued a judgment noting that the time for filing postdecision motions had expired, Scarborough's counsel filed a second EAJA application (the one at issue here) setting forth, as did the first application, that Scarborough was the prevailing party in the underlying litigation; that his net worth did not exceed $2 million; and a description of work counsel performed for Scarborough since counsel's retention in August 1998. *Id.*, at 8–9. The application requested $19,333.75 in attorney's fees and $117.80 in costs. *Id.*, at 9. Scarborough's applications, both the first and the second, failed to allege "that the position of the United States [in the underlying litigation] was not substantially justified," §2412(d)(1)(B). In all other respects, it is not here disputed, Scarborough's filings met the §2412(d)(1)(B) application-content requirements.

Again, the Clerk of the CAVC found the application premature, but this time retained it, unfiled, until the time to appeal the CAVC's judgment had expired. The Clerk then filed the fee application and notified the respondent Secretary of Veterans Affairs that his response was due within 30 days. *Id.*, at 10. After receiving and exhausting a 30-day extension of time to respond, the Secretary moved to dismiss the fee application. *Id.*, at 2. The CAVC lacked subject-matter jurisdiction to award fees under §2412(d), the Secretary maintained, because Scarborough's counsel had failed to allege, within 30 days of the final judgment, "that the position of the United States was not substantially justified," §2412(d)(1)(B). CAVC Record, Doc. 12, pp. 4–5.

Scarborough's counsel promptly filed an amendment to the fee application, stating in a new paragraph that "the government's defense of the Appellant's claim was not substantially justified." App. 11. Simultaneously, Scarborough opposed the Secretary's motion to dismiss, urging that the omission initially to plead "no substantial justification" could be cured

by amendment and was not a jurisdictional defect. CAVC Record, Doc. 13, pp. 1–2. On June 14, 2000, the CAVC dismissed Scarborough's fee application on the ground asserted by the Government. *Scarborough* v. *West*, 13 Vet. App. 530 *(per curiam)*.

A year-and-a-half later, the Court of Appeals for the Federal Circuit affirmed. 273 F. 3d 1087 (2001). EAJA must be construed strictly in favor of the Government, the Court of Appeals stated, because the Act effects a partial waiver of sovereign immunity, rendering the United States liable for attorney's fees when the Government otherwise would not be required to pay. *Id.*, at 1089–1090. In the court's view, "[t]he language of the EAJA statute is plain and unambiguous"; it requires a party seeking fees under § 2412(d) to submit an application, including all enumerated allegations, within the 30-day time limit. *Id.*, at 1090 (citing § 2412(d)(1)(B)). The court acknowledged that the Courts of Appeals for the Third and Eleventh Circuits read § 2412(d)(1)(B) to require only that the fee application be *filed* within 30 days; those Circuits allow later amendments to perfect the application-content specifications set out in § 2412(d)(1)(B). *Id.*, at 1090–1091 (citing *Dunn* v. *United States*, 775 F. 2d 99, 104 (CA3 1985) (applicant need not submit within 30 days an itemized statement accounting for the amount sought), and *Singleton* v. *Apfel*, 231 F. 3d 853, 858 (CA11 2000) (applicant need not allege within 30 days that her net worth did not exceed $2 million or that the Government's position was not substantially justified)).

The Federal Circuit also distinguished its own decision in *Bazalo* v. *West*, 150 F. 3d 1380 (1998), which had held that an applicant may supplement an EAJA application to cure an initial failure to show eligibility for fees. The applicant in *Bazalo* had failed to allege and establish, within the 30-day period, that he was a qualified "party" within the meaning of § 2412(d), *i. e.*, that his "net worth did not exceed $2,000,000 at the time the civil action was filed,"

§ 2412(d)(2)(B). *Id.*, at 1381. *Bazalo* differed from Scarborough's case, the Court of Appeals said, because the *Bazalo* applicant had essentially complied with the basic pleading requirements and simply needed to "fles[h] out . . . the details." 273 F. 3d, at 1092.

We granted Scarborough's initial petition for a writ of certiorari, vacated the judgment of the Court of Appeals, and remanded the case in light of this Court's decision in *Edelman* v. *Lynchburg College*, 535 U. S. 106 (2002). See 536 U. S. 920 (2002). *Edelman* concerned an Equal Employment Opportunity Commission (EEOC) regulation relating to Title VII of the Civil Rights Act of 1964; the regulation allowed amendment of an employment discrimination charge, timely filed with the EEOC, to add, after the filing deadline had passed, the required, but initially absent, verification. See 42 U. S. C. § 2000e–5(b) (requiring charges to "be in writing under oath or affirmation"). We upheld the regulation. Title VII, we explained, in line with "a long history of practice," 535 U. S., at 116, permitted "relation back" of a verification missing from an original filing, *id.*, at 115–118.

On remand of Scarborough's case to the same Federal Circuit panel, two of the three judges adhered to the panel's unanimous earlier decision and distinguished *Edelman*. 319 F. 3d 1346 (2003). Unlike the civil rights statute in *Edelman*, the Court of Appeals majority said, a "remedial scheme" in which laypersons often initiate the process, EAJA is directed to attorneys, who do not need "paternalistic protection." 319 F. 3d, at 1353 (internal quotation marks omitted). The Federal Circuit's majority further observed that the two requirements at issue in *Edelman*—the timely filing of a discrimination charge and the verification of that charge—appear in separate statutory provisions. In contrast, EAJA's 30-day filing deadline and the contents required for a fee application are detailed in the same statutory provision. 319 F. 3d, at 1353. The majority also distinguished *Becker* v. *Montgomery*, 532 U. S. 757 (2001), in which

we held that a *pro se* litigant's failure to hand sign a timely filed notice of appeal is a nonjurisdictional, and therefore curable, defect. This Court had noted in *Becker*, the Federal Circuit majority pointed out, that the timing and signature requirements there at issue were found in separate rules. See 319 F. 3d, at 1353. The Federal Circuit's opinion next distinguished *Edelman*'s verification requirement and *Becker*'s signature requirement from EAJA's no-substantial-justification-allegation requirement on this additional ground: "[The] . . . substantial justification [allegation] is not a pro forma requirement," for it "requires an applicant to analyze the case record" and "is one portion of the basis of the award itself." 319 F. 3d, at 1353. Reiterating that the no-substantial-justification allegation is "jurisdictional," the Federal Circuit held that Scarborough's "[n]oncompliance [was] fatal" and dismissed the application. *Id.*, at 1355.

Chief Judge Mayer dissented. The no-substantial-justification allegation, he found, "is akin to the verification requirement of *Edelman* and the signature requirement of *Becker.*" *Id.*, at 1356. In addition to the pathmarking *Edelman* and *Becker* decisions, he regarded this case as "substantially the same case as *Bazalo.*" 319 F. 3d, at 1356. In light of EAJA's purpose "to eliminate the financial disincentive for those who would defend against unjustified governmental action and thereby deter it," Chief Judge Mayer concluded, "it is apparent that Congress did not intend the EAJA application process to be an additional deterrent to the vindication of rights because of a missing averment." *Ibid.*

We granted certiorari, 539 U. S. 986 (2003), in view of the division of opinion among the Circuits on the question whether an EAJA application may be amended, outside the 30-day period, to allege that the Government's position in the underlying litigation was not substantially justified, compare *Singleton*, 231 F. 3d 853, with 319 F. 3d 1346. We now reverse the judgment of the Court of Appeals.

## II

### A

We clarify, first, that the question before us—whether Scarborough is time barred by § 2412(d)(1)(B) from gaining the fee award authorized by § 2412(d)(1)(A)—does not concern the federal courts' "subject-matter jurisdiction." Rather, it concerns a mode of relief (costs including legal fees) ancillary to the judgment of a court that has plenary "jurisdiction of [the civil] action" in which the fee application is made. See §§ 2412(b) and (d)(1)(A) (costs including fees awardable "in any civil action" brought against the United States "in any court having jurisdiction of [that] action"); 38 U. S. C. § 7252(a) ("The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals.").[3] More particularly, the current dispute between Scarborough and the Government presents a question of time. The issue is not whether, but when, §§ 2412(d)(1)(A) and (B) require a fee applicant to "allege that the position of the United States was not substantially justified." As we recently observed:

> "Courts, including this Court, . . . have more than occasionally [mis]used the term 'jurisdictional' to describe emphatic time prescriptions in [claim processing] rules . . . . Classifying time prescriptions, even rigid ones, under the heading 'subject matter jurisdiction' can be confounding. Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating

---

[3] Scarborough had already invoked the CAVC's exclusive jurisdiction—by appealing the Board of Veterans' Appeals' July 1998 decision denying his claim for disability benefits—well before he applied for fees; this distinguishes his case from *Torres* v. *Oakland Scavenger Co.*, 487 U. S. 312 (1988), on which the Government relies. See Brief for Respondent 11, 20, n. 3. *Torres* involved the omission of required content (each applicant's name) in a notice of appeal, the filing that triggers appellate-court jurisdiction over the case. See 487 U. S., at 315, 317.

the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick* v. *Ryan*, 540 U. S. 443, 454–455 (2004) (citation, some internal quotation marks, and brackets omitted).

In short, § 2412(d)(1)(B) does not describe what "classes of cases," *id.*, at 455, the CAVC is competent to adjudicate; instead, the section relates only to postjudgment proceedings auxiliary to cases already within that court's adjudicatory authority. Accordingly, as *Kontrick* indicates, the provision's 30-day deadline for fee applications and its application-content specifications are not properly typed "jurisdictional."

## B

We turn next to the reason why Congress required the fee applicant to "allege" that the Government's position "was not substantially justified," § 2412(d)(1)(B).[4] Unlike the § 2412(d)(1)(B) prescriptions on what the applicant must *show* (his "prevailing party" status and "eligib[ility] to receive an award," and "the amount sought, including an itemized statement" reporting "the actual time expended and the rate at which fees and other expenses were computed"), the required "not substantially justified" allegation imposes no proof burden on the fee applicant. It is, as its text conveys, nothing more than an allegation or pleading requirement. The burden of establishing "that the position of the United States was substantially justified," § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government. See, *e. g.*, *Pierce* v. *Underwood*, 487

---

[4] All agree that § 2412(d)(1)(B) requires a fee applicant to *allege* that the Government's position "was not substantially justified." In this regard, the dissent sees fire where there is no flame. The guides the dissent sets out, *post*, at 424–425, nn. 2 and 3—court rules and agency regulations—address only what the applicant must *plead*, not the question of time presented here.

U. S. 552, 567 (1988); *id.*, at 575 (Brennan, J., concurring in part and concurring in judgment); *Davidson* v. *Veneman*, 317 F. 3d 503, 506 (CA5 2003); *Lauer* v. *Barnhart*, 321 F. 3d 762, 764 (CA8 2003); *Libas, Ltd.* v. *United States*, 314 F. 3d 1362, 1365 (CA Fed. 2003). See also H. R. Rep. No. 96–1005, at 10 ("[T]he strong deterrents to contesting Government action that currently exis[t] require that the burden of proof rest with the Government.").

Congress did not, however, want the "substantially justified" standard to "be read to raise a presumption that the Government position was not substantially justified simply because it lost the case . . . ." *Ibid.* By allocating the burden of pleading "that the position of the United States was not substantially justified"—and that burden only—to the fee applicant, Congress apparently sought to dispel any assumption that the Government must pay fees each time it loses. Complementarily, the no-substantial-justification-allegation requirement serves to ward off irresponsible litigation, *i. e.,* unreasonable or capricious fee-shifting demands. As counsel for the Government stated at oral argument, allocating the pleading burden to fee applicants obliges them "to examine the Government's position and make a determination . . . whether it is substantially justified or not." Tr. of Oral Arg. 31; see *id.,* at 19 (petitioner recognizes that "the purpose of this allegation [is to make] a lawyer think twice"). So understood, the applicant's burden to plead that the Government's position "was not substantially justified" is akin to the signature requirement in *Becker* and the oath or affirmation requirement in *Edelman.*

In *Becker,* a *pro se* litigant had typed, but had neglected to hand sign, his name, as required by Federal Rule of Civil Procedure 11(a), on his timely filed notice of appeal. 532 U. S., at 760–761, 763; see *supra,* at 411–412. Although we called the rules on the timing and content of notices of appeal "linked jurisdictional provisions," *Becker,* 532 U. S., at 765 (referring to Fed. Rules App. Proc. 3 and 4), we concluded

that a litigant could add the signature required by Rule 11(a) even after the time for filing the notice had expired, 532 U. S., at 766–767. Rule 11(a), we observed, provides that "omission of the signature" on any "pleading, written motion, [or] other paper" may be "corrected promptly after being called to the attention of the attorney or party." See 532 U. S., at 764. Permitting a late signature to perfect an appeal, we explained, was hardly pathbreaking, for "[o]ther opinions of this Court are in full harmony with the view that imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Id.*, at 767–768 (citing *Smith* v. *Barry*, 502 U. S. 244, 245, 248–249 (1992), and *Foman* v. *Davis*, 371 U. S. 178, 181 (1962)).

The next Term, in *Edelman*, we described our decision in *Becker* as having allowed "relation back" of the late signature to the timely filed notice of appeal. 535 U. S., at 116. *Edelman* involved an EEOC regulation permitting a Title VII discrimination charge timely filed with the agency to be amended, outside the charge-filing period, to include an omitted, but required, verification. *Id.*, at 109; see *supra*, at 411. "There is no reason," we observed in sustaining the regulation, "to think that relation back of the oath here is any less reasonable than relation back of the signature in *Becker*. Both are aimed at stemming the urge to litigate irresponsibly . . . ." 535 U. S., at 116.

*Becker* and *Edelman* inform our judgment in this case. Like the signature and verification requirements, EAJA's ten-word "not substantially justified" allegation is a "think twice" prescription that "stem[s] the urge to litigate irresponsibly," *Edelman*, 535 U. S., at 116; at the same time, the allegation functions to shift the burden to the Government to prove that its position in the underlying litigation "was substantially justified," §2412(d)(1)(A). We note, too, that the allegation does not serve an essential notice-giving function; the Government is aware, from the moment a fee appli-

cation is filed, that to defeat the application on the merits, it will have to prove its position "was substantially justified." As *Becker* indicates, the lapse here "should not be fatal where no genuine doubt exists about who is app[lying] [for fees], from what judgment, to which . . . court." 532 U. S., at 767. Moreover, because Scarborough's lawyer's statutory contingent fee would be reduced dollar for dollar by an EAJA award, see 38 U. S. C. § 5904(d)(1); Fee Agreements, note following 28 U. S. C. § 2412, allowing the curative amendment benefits the complainant directly, and is not fairly described as simply a boon for his counsel. Permitting amendment thus advances Congress' purpose, in enacting EAJA, to reduce the "emphasi[s], virtually to the exclusion of all other issues, [on] the cost of potential litigation" in a party's decision whether to challenge unjust governmental action. H. R. Rep. No. 96–1005, at 7.

The Government, however, maintains that the relation-back regime, as now codified in Rule 15(c) of the Federal Rules of Civil Procedure, is out of place in this context, for that Rule governs "pleadings," a term that does not encompass fee applications. Brief for Respondent 21; see Fed. Rule Civ. Proc. 15(c)(2) (permitting relation back of amendments to pleadings when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original [timely filed] pleading"). See also Rule 7(a) (enumerating permitted "pleadings"). Scarborough acknowledges that Rule 15(c) itself is directed to federal district court "pleadings," but urges that this Court has approved application of the relation-back doctrine in analogous settings. Brief for Petitioner 28. Most recently, as just related, we applied the doctrine in *Becker* and *Edelman* to, respectively, a notice of appeal and an EEOC discrimination charge, neither of which is a "pleading" under the Federal Rules. As the Government concedes, moreover, see Tr. of Oral Arg. 35–36, "relation back" was not an invention of the

federal rulemakers. We applied the doctrine well before 1938, the year the Federal Rules became effective. See, *e. g., New York Central & Hudson River R. Co.* v. *Kinney,* 260 U. S. 340, 346 (1922); *Seaboard Air Line R. Co.* v. *Renn,* 241 U. S. 290, 293–294 (1916); *Missouri, K. & T. R. Co.* v. *Wulf,* 226 U. S. 570, 575–576 (1913). With a view to then-existing practice, the original Rules Advisory Committee described "relation back" as "a well recognized doctrine." Advisory Committee's 1937 Note on Subd. (c) of Fed. Rule Civ. Proc. 15, 28 U. S. C. App., p. 686. Commentators have observed that the doctrine Rule 15(c) embraces "has its roots in the former federal equity practice and a number of state codes." 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1496, p. 64 (2d ed. 1990).[5]

The relation-back doctrine, we accordingly hold, properly guides our determination that Scarborough's fee application could be amended, after the 30-day filing period, to include the "not substantially justified" allegation: The amended application "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth" in the initial applica-

---

[5] See, *e. g.,* Fed. Equity Rule 19 (1912) ("The court may at any time, in furtherance of justice, upon such terms as may be just, permit any process, proceeding, pleading or record to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading. The court, at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); Ill. Rev. Stat., ch. 110, §§ 170(1)–(2) (Smith-Hurd 1935) ("At any time before final judgment in a civil action, amendments may be allowed . . . in any process, pleading or proceedings . . . . The cause of action, cross demand or defense set up in any amended pleading shall not be barred by, lapse of time . . . if the time prescribed or limited had not expired when the original pleading was filed, and if . . . the amended pleading grew out of the same transaction or occurrence set up in the original pleading . . . ."); 2 Wash. Rev. Stat. § 308–3(4) (Remington 1932) ("A cause of action which would not have been barred by the statute of limitations if stated in the original complaint or counterclaim shall not be so barred if introduced by amendment at any later stage of the action, if the adverse party was fairly apprised of its nature by the original pleading . . . .").

tion. Fed. Rule Civ. Proc. 15(c)(2). Just as failure initially to verify a charge or sign a "pleading, written motion, [or] other paper," Fed. Rule Civ. Proc. 11(a), was not fatal to the petitioners' cases in *Edelman* and *Becker,* so here, counsel's initial omission of the assertion that the Government's position lacked substantial justification is not beyond repair.[6]

## C

The Government insists most strenuously that §2412's waiver of sovereign immunity from liability for fees is condi-

---

[6] Scarborough also urges that, regardless of the availability of "relation back," §2412(d)(1)(B)'s 30-day deadline does not apply to the no-substantial-justification-allegation requirement. Brief for Petitioner 36–39. In support, Scarborough points out that Congress easily could have placed the allegation requirement in the first sentence of §2412(d)(1)(B), together with the 30-day deadline and the other application-content specifications. Congress' decision, instead, to set forth the allegation requirement in a separate, second sentence, which contains no time limitation, Scarborough asserts, is significant. *Id.,* at 39. Moreover, Scarborough contends, the fact that §2412(d)(1)(B)'s second sentence is structured differently from the section's first sentence (requiring the "party" to "allege," rather than directing "the application" to "sho[w]") further indicates that Congress viewed the "not substantially justified" allegation as separate from the fee application's requirements more closely linked to the filing deadline. *Id.,* at 38. We do not think that this question, as the Government suggests, was answered in *Commissioner, INS* v. *Jean,* 496 U. S. 154 (1990). See Brief for Respondent 15, 24; Tr. of Oral Arg. 28, 45. In *Jean,* we held that a party who prevails in fee litigation under EAJA may recover fees for legal services rendered during the fee litigation even if some of the Government's positions regarding the proper fee were "substantially justified," *i. e.,* the district court need not make a second finding of no substantial justification before awarding fees for the fee contest itself. 496 U. S., at 160–162. The sentence in *Jean* on which the Government relies, stating that "[a] fee application must contain an allegation 'that the position of the United States was not substantially justified,'" *id.,* at 160, like *Jean's* holding, did not concern the timing question we here confront. In any event, because our decision rests on the applicability of the relation-back doctrine, we do not further explore the debatable question whether §2412(d)(1)(B)'s 30-day deadline even applies to the "not substantially justified" allegation requirement.

tioned on the fee applicant's meticulous compliance with each and every requirement of § 2412(d)(1)(B) within 30 days of final judgment. Brief for Respondent 18–19; Tr. of Oral Arg. 28, 31; see *Ardestani* v. *INS*, 502 U. S. 129, 137 (1991) ("EAJA renders the United States liable for attorney's fees for which it would otherwise not be liable, and thus amounts to a partial waiver of sovereign immunity."). In the Government's view, a failure to allege that the position of the United States "was not substantially justified" before the 30-day clock has run is as fatal as an omission of any other § 2412(d)(1)(B) specification. Brief for Respondent 15; Tr. of Oral Arg. 45.[7]

We observe, first, that the Federal Circuit's reading of § 2412(d)(1)(B) is not as unyielding as the Government's. Indeed, the Federal Circuit has held that a fee application may be amended, out of time, to show that the applicant "is eligible to receive an award," § 2412(d)(1)(B). See *Bazalo*, 150 F. 3d, at 1383–1384 (amendment made after 30-day filing period cured failure initially to establish that fee applicant's net worth did not exceed $2 million). As earlier noted, see *supra*, at 412, the dissenting judge in Scarborough's case found *Bazalo* indistinguishable. 319 F. 3d, at 1355–1356 (opinion of Mayer, C. J.).

Our decisions in *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89 (1990), and *Franconia Associates* v. *United States*, 536 U. S. 129 (2002), are enlightening on this issue. *Irwin* involved an untimely filed Title VII employment discrimination complaint against the Government. Although the petitioner had missed the filing deadline, we held that Title VII's statutory time limits are subject to equitable

---

[7] The question whether a fee application may be amended after the 30-day filing period to cure an initial failure to make the "show[ings]" set forth in the first sentence of § 2412(d)(1)(B) is not before us. We offer no view on the applicability of "relation back" in that situation.

tolling, even against the Government. 498 U. S., at 95.[8] Similarly, in *Franconia*, we rejected an "unduly restrictive" construction of the statute of limitations for claims filed against the United States under the Tucker Act, 28 U. S. C. § 1491. See 536 U. S., at 145 (internal quotation marks and brackets omitted); *ibid.* (refusing to adopt "special accrual rule" for commencement of limitations period against the Government).

In those decisions, we recognized that "limitations principles should generally apply to the Government 'in the same way that' they apply to private parties." *Ibid.* (quoting *Irwin*, 498 U. S., at 95). Once Congress waives sovereign immunity, we observed, judicial application of a time prescription to suits against the Government, in the same way the prescription is applicable to private suits, "amounts to little, if any, broadening of the congressional waiver." *Irwin*, 498 U. S., at 95. We further stated in *Irwin* that holding the Government responsible "is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." *Ibid.*[9]

The Government nevertheless maintains that *Irwin* and *Franconia* do not bear on this case, for "[§] 2412(d) author-

---

[8] Although we held that equitable tolling could be applied in Title VII claims against the Government, we further determined that the doctrine's requirements were not met on the specific facts of *Irwin*. The *Irwin* petitioner's excuse for the late complaint—his lawyer's absence from the office when the EEOC notice that triggered the complaint-filing deadline was received—ranked "at best [as] a garden variety claim of excusable neglect." 498 U. S., at 96. In this case, we note, the Government extensively argues against recourse to *Irwin*'s "rebuttable presumption" that equitable tolling is available in litigation Congress has authorized against the United States. *Id.*, at 95; see Brief for Respondent 32–41. Because our decision rests on other grounds, we express no opinion on the applicability of equitable tolling in the circumstances here presented.

[9] Indeed, in enacting EAJA, Congress expressed its belief that "at a minimum, the United States should be held to the same standards in litigating as private parties." H. R. Rep. No. 96–1418, p. 9 (1980).

izes fee awards against the government under rules that have no analogue in private litigation." Brief for Respondent 39. But it is hardly clear that *Irwin* demands a precise private analogue. Litigation against the United States exists because Congress has enacted legislation creating rights against the Government, often in matters peculiar to the Government's engagements with private persons—matters such as the administration of benefit programs. Because many statutes that create claims for relief against the United States or its agencies apply only to Government defendants, *Irwin*'s reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent.

In any event, § 2412(d) is analogous to other fee-shifting provisions abrogating the general rule that each party to a lawsuit pays his own legal fees. The provision resembles "prevailing party" fee-shifting statutes that are applicable to suits between private litigants. See, *e. g.*, 15 U. S. C. § 1692k(a)(3) (Fair Debt Collection Practices Act); 29 U. S. C. § 2617(a)(3) (Family and Medical Leave Act of 1993); 42 U. S. C. § 2000e–5(k) (Title VII); cf. *Franconia*, 536 U. S., at 145 (comparing Tucker Act statute of limitations to "contemporaneous state statutes of limitations applicable to suits between private parties [that] also tie the commencement of the limitations period to the date a claim 'first accrues'.").

We note, finally, that the Government has never argued that it will be prejudiced if Scarborough's "not substantially justified" allegation is permitted to relate back to his timely filed fee application. Moreover, a showing of prejudice should preclude operation of the relation-back doctrine in the first place. See *Singleton*, 231 F. 3d, at 858 ("The interests of the government and the courts will be served, however, if district courts are empowered to . . . outright deny a request to supplement [a fee application] if the government would be prejudiced."). In addition, EAJA itself has a built-in check: Section 2412(d)(1)(A) disallows fees where

"special circumstances make an award unjust." See H. R. Rep. No. 96–1418, p. 11 (1980) (§ 2412(d)(1)(A)'s "safety valve" gives "the court discretion to deny awards where equitable considerations dictate an award should not be made"). Our conclusion that a timely filed EAJA fee application may be amended, out of time, to allege "that the position of the United States was not substantially justified," § 2412(d)(1)(B), therefore will not expose the Government to any unfair imposition.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals for the Federal Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

Without deciding that the statutorily mandated 30-day deadline "even applies to the 'not substantially justified' allegation requirement," *ante,* at 419, n. 6, the Court, nonetheless, applies the relation-back doctrine to cure the omitted no-substantial-justification allegation in petitioner's Equal Access to Justice Act (EAJA) fee application. The Court should have first addressed whether, as a textual matter, the no-substantial-justification allegation must be made within the 30-day deadline. I conclude that it must. The question then becomes whether the judicial application of the relation-back doctrine is appropriate in a case such as this where the statute defines the scope of the Government's waiver of sovereign immunity. Because there is no express allowance for relation back in EAJA, I conclude that the sovereign immunity canon applies to construe strictly the scope of the Government's waiver. The Court reaches its holding today by distorting the scope of *Irwin* v. *Department of Vet-*

*erans Affairs,* 498 U. S. 89 (1990), and by eviscerating that case's doctrinal underpinnings.

## I

In my view, the better reading of the text of the statute is that the 30-day deadline applies to the no-substantial-justification-allegation requirement. The first sentence of 28 U. S. C. § 2412(d)(1)(B) states that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees . . . which shows": (1) the applicant's status as a prevailing party; (2) that the applicant is eligible to receive fees under § 2412(d)(2)(B); and (3) the itemized amount sought. The second sentence of § 2412(d)(1)(B) provides: "The party shall also allege that the position of the United States was not substantially justified." *Ibid.* In stating that the applicant "shall *also*" make the no-substantial-justification allegation, the second sentence links the allegation requirement with the timing and other content requirements of the first sentence.[1] Indeed, there is only one deadline expressly contained in the provision. That 30-day deadline imposes a limitation on a set of requirements that petitioner must satisfy in order to receive an EAJA fee award. Immediately following the deadline is another sentence that requires the petitioner to make the no-substantial-justification allegation. Taking the provision as a whole, it is quite natural to read it as applying the 30-day deadline to all of its requirements.[2] And, this reading is

[1] "Also" is defined as "likewise," Webster's Ninth New Collegiate Dictionary 75 (1991), or "in like manner," Black's Law Dictionary 77 (6th ed. 1990).

[2] Several Courts of Appeals explicitly require an applicant to include the no-substantial-justification allegation in an EAJA fee application. See Federal Court of Appeals Manual: Local Rules 344–345 (West 2004) (CA2 "Local Form for EAJA Fee Application"); *id.,* at 1474–1475 (CA Fed. form "Application for Fees and Other Expenses Under the [EAJA]"); *id.,* at 244–245 (CA1 Rule 39(a)(2)(D) (2004) ("The application shall . . . identify

confirmed by numerous federal agency regulations,[3] which have interpreted a nearly identical EAJA provision allowing for fees in adversary adjudications conducted before federal agencies.[4]

## II

Because I conclude that the no-substantial-justification allegation must be made within the 30-day deadline, the ques-

the specific position of the United States that the party alleges was not substantially justified")); *id.*, at 699 (CA5 Rule 47.8.2(a) (2004) ("The application . . . must identify the position of the United States or an agency thereof that the applicant alleges was not substantially justified")); *id.*, at 1103 (CA9 Rule 39–2.1 (2004) ("The application . . . shall identify the position of the United States Government or an agency thereof in the proceeding that the applicant alleges was not substantially justified")).

[3] See, *e. g.*, 49 CFR § 6.17(a) (2003) ("The application shall . . . identify the position of an agency or agencies in the proceeding that the applicant alleges was not substantially justified"); 40 CFR § 17.11(a) (2003) ("The application shall . . . identify the position of [the Environmental Protection Agency] in the proceeding that the applicant alleges was not substantially justified"); 15 CFR § 18.11(a) (2003) ("The application shall . . . identify the position of the Department [of Commerce] . . . that the applicant alleges was not substantially justified"); 34 CFR § 21.31 (2003) ("In its application for an award of fees and other expenses, an applicant shall include . . . [a]n allegation that the position of the Department [of Education] was not substantially justified, including a description of the specific position"); 24 CFR § 14.200(a) (2003) ("An application for an award of fees and expenses under the Act shall . . . identify the position of the Department [of Housing and Urban Development] or other agencies that the applicant alleges was not substantially justified"); 39 CFR § 960.9(a) (2003) ("The application shall . . . identify the position of the Postal Service in the proceeding that the applicant alleges was not substantially justified").

[4] See 5 U. S. C. § 504(a)(2) ("A party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under this section, and the amount sought, including an itemized statement from any attorney, agent, or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the agency was not substantially justified").

tion becomes whether the relation-back doctrine should apply here. The EAJA requirement for filing a timely fee application with the statutorily prescribed content is a condition on the United States' waiver of sovereign immunity in § 2412(d)(1)(A). See *Ardestani* v. *INS*, 502 U. S. 129, 137 (1991). As such, the scope of the waiver must be strictly construed. See, *e. g., Irwin*, 498 U. S., at 94; *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992) (stating that a waiver of sovereign immunity "must be construed strictly in favor of the sovereign" and "not enlarge[d] . . . beyond what the language requires" (internal quotation marks omitted)); *Library of Congress* v. *Shaw*, 478 U. S. 310, 318 (1986) (same); *Lehman* v. *Nakshian*, 453 U. S. 156, 161 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied" (internal quotation marks omitted)). Since the relation-back doctrine relied upon by the Court is not present in the text of the statute, under a simple application of the sovereign immunity canon, petitioner is not entitled to "relate-back" his allegation beyond the 30-day deadline.

The only way the Court avoids this straightforward conclusion is by applying *Irwin*. *Ante*, at 420–422. Although *Irwin* does perhaps narrow the scope of the sovereign immunity canon, it does so only in limited circumstances. In particular, where the Government is made subject to suit to the same extent and in the same manner as private parties are, *Irwin* holds that the Government is subject to the rules that are "applicable to private suits." 498 U. S., at 95. The Court in *Irwin*, addressing equitable tolling, explained that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling,'" and that "[o]nce Congress has made . . . a waiver [of sovereign immunity], . . . making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening

of the congressional waiver." *Ibid.* The Court determined that "[s]uch a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." *Ibid.*

Notwithstanding *Irwin*'s limited scope, the Court concludes: "*Irwin*'s reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent." *Ante,* at 422. The existence of this "private-litigation equivalent," however, formed the very basis for the Court's holding in *Irwin.*

I agree with the Government that there is "no analogue in private litigation," Brief for Respondent 39, for the EAJA fee awards at issue here. Section 2412(d) authorizes fee awards against the Government when there is no basis for recovery under the rules for private litigation.[5] *Irwin*'s analysis simply cannot apply to a proceeding against the Government when there is no analogue for it in private litigation. Accordingly, I would apply the sovereign immunity canon to construe strictly the scope of the Government's waiver and, therefore, against allowing an applicant to avoid the express statutory limitation through judicial application of the relation-back doctrine. For these reasons, I respectfully dissent.

---

[5] Compare 28 U. S. C. § 2412(d)(1)(A) ("Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust") with § 2412(b) ("The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award").