**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0085n.06
Filed: February 1, 2006

**05-5418**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANTHONY B. PECK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL | ) | WESTERN DISTRICT OF KENTUCKY |
| SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN, NORRIS, and DAUGHTREY, Circuit Judges.

PER CURIAM. The plaintiff, Anthony Peck, appeals from the district court's denial of his request for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Before this court, he contends that the district court should have awarded him the requested fees and expenses because the position taken by the United States in this social security disability proceeding was not "substantially justified." We conclude that the district judge did not abuse his discretion in determining that the ruling of the Commissioner of the Social Security Administration, although later reversed by this court, was nevertheless substantially justified by the relevant facts. We therefore affirm the judgment of the district court.

## **FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the most recent decision by an administrative law judge in this matter, Anthony Peck was a 43-year-old former laborer, ironworker, and truck driver. Although the plaintiff had a high school education, he claimed to be unable to obtain gainful employment due to a severe right-leg injury that he received in an automobile accident in 1998. Indeed, after that accident, Peck underwent numerous medical procedures to his leg and knee but remained severely impaired in his ability to walk and perform other routine activities.

On January 27, 2001, at the request of the Social Security Administration, Dr. Dennis Beck examined the plaintiff and concluded:

> Mr. Peck is a 42-year-old male with a devastating right knee injury. He has developed almost any and every complication possible with this injury. He had every heroic attempt done including chronic irrigation debridement, antibiotic beads, internal fixation to fix his knee, and it was unsuccessful because of the severity of the injury.

> He is scheduled for a knee fusion at some point in the future. He is off antibiotics now. His wound is still draining in my examination today and I think his chances of returning to his previous work is 0%. If anything, he needs to be retrained but he certainly is not going to be able to do anything where he has to stand on that foot for any period of time.

Dr. Beck also filled out a "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)" regarding Peck and indicated that the plaintiff could lift less than ten pounds and requires a "hand-held assistive device" for standing or walking. Interestingly, Beck further checked two specific boxes on the form, one that stated that the plaintiff could

stand and/or walk "less than 2 hours in an 8-hour workday," and a second box that stated that Peck could stand and/or walk "about 6 hours in an 8-hour workday."

Approximately five months later, the plaintiff's treating physician, Stephen Jackson, also filled out a "Medical Source Statement" and agreed with Beck that Anthony Peck could lift less than ten pounds and that the plaintiff required a hand-held assistive device for walking. But although Jackson indicated that the plaintiff's abilities to stand and/or walk were affected by his impairment, he failed to indicate on the form how many hours Peck could walk or stand during a normal workday.

Based upon this somewhat incomplete, somewhat conflicting picture of Peck's situation, the administrative law judge found:

> [Peck] can perform sedentary work activity on a sustained basis. He needs an ambulation aid in order to stand and walk, and he can stand and/or walk a total of two hours out of eight hours. He has no limitation regarding sitting. He can lift and/or carry and push and/or pull 10 pounds occasionally and 5 pounds frequently. He should never kneel, crouch, crawl, climb, or balance, but can frequently stoop, defined as bending at the waist, and he can sit and bend at the waist while seated without limitation. He should avoid concentrated exposure to unprotected heights and moving/dangerous machinery, and he should avoid whole body vibration.

The administrative law judge then concluded that Peck could no longer perform the functions of his prior employment, but that his impairment did not meet or medically equal the listed impairments in the applicable regulations, 20 C.F.R. Part 404, Subpart P, Appendix I, and that he retained "the residual functional capacity to perform a significant

range of sedentary work." Consequently, the administrative law judge ruled that the plaintiff "was not under a 'disability,'" and was not, therefore, entitled to benefits under the Social Security Act.

The Appeals Council affirmed the decision of the administrative law judge, as did the district court, upon the recommendation of a magistrate judge. A panel of this court, however, decided that "uncontradicted evidence of record . . . shows that Peck's condition met or medically equaled the impairment listed [in the regulations] prior to his undergoing fusion of the knee. Thus, the [administrative law judge] erred when he concluded that Peck's condition did not meet or medically equal a listed impairment." Peck v. Barnhart, 105 Fed. Appx. 43, 46-47 (6th Cir. 2004). The panel therefore reversed the district court's judgment and remanded the case to the district judge with instructions to remand the case to the Commissioner of Social Security for an award of benefits. See id. at 47.

Following that favorable determination, Peck filed a petition with the district court for an award of fees under the Equal Access to Justice Act. The district court denied the petition, however, finding that the government's decision to withhold benefits was, although subsequently determined to be erroneous, "substantially justified." This appeal ensued.

## **DISCUSSION**

Generally, each party to a lawsuit is responsible for payment of its own legal fees.

See Scarborough v. Principi, 541 U.S. 401, 404 (2004).  The Equal Access to Justice Act,

however, departs from that general proposition and, in relevant part, states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

"The burden of establishing 'that the position of the United States was substantially

justified,' . . . must be shouldered by the Government."  Scarborough, 541 U.S. at 414.  To

satisfy that burden, the United States must show that its position was "justified to a degree

that could satisfy a reasonable person," not merely that the government was "undeserving

of sanctions for frivolousness."  Pierce v. Underwood, 487 U.S. 552, 565-66 (1988).  See

also Damron v. Comm'r of Soc. Sec., 104 F.3d 853, 855 (6th Cir. 1997).  As another panel

of this court has noted:

> Stated otherwise, a position is substantially justified when it has a "reasonable basis both in law and fact."  The fact that we found that the Commissioner's position was unsupported by substantial evidence does not foreclose the possibility that the position was substantially justified.  Indeed, "Congress did not . . . want the 'substantially justified' standard to 'be read to

> raise a presumption that the Government position was not substantially justified simply because it lost the case. . . .'"

Howard v. Barnhart, 376 F.3d 551, 554 (6th Cir. 2004) (citations omitted).

In reviewing the district court's determination that the government's position in this litigation was indeed substantially justified, we will reverse such a finding only if the ruling constituted an abuse of the district judge's discretion. See Pierce, 487 U.S. at 559; Damron, 104 F.3d at 855. We will consider a district court to have abused its discretion only if we come to "a definite and firm conviction that the trial court committed a clear error in judgment." Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996).

In this matter, the administrative law judge noted that Peck's treating physician placed no limitation on the amount of time during a workday that the plaintiff could sit. He further credited the assessment of Dr. Beck that Peck could stand and/or walk a total of two hours during any given eight-hour workday, and obviously regarded Beck's statement that Peck cannot perform any job "where he has to stand on that foot for any period of time" as simply requiring that the plaintiff alternate periods of standing and/or walking with periods of sitting or resting. Because the administrative law judge could not equate the ability to stand for two hours during a workday with a "markedly limiting ability to walk and stand" that would have mandated a finding that Peck met or equaled a medical listing requirement for disability, that decision-maker concluded that the plaintiff was not disabled.

Ultimately, a panel of this court concluded that the administrative law judge's assessment of what constituted a "markedly limiting ability to walk and stand" was different from that of the appellate court panel. That fact alone, however, does not justify a conclusion that the government's position in this matter was not "substantially justified." Indeed, the Appeals Council, a magistrate judge, and a district judge all agreed with the administrative law judge's assessment. The United States Supreme Court itself has recognized that "[t]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." Pierce, 487 U.S. at 569. "Nevertheless, a string of losses can be indicative; and even more so a string of successes." Id.

Consequently, given the factual situation presented by this appeal – the ambiguous medical assessments and the reasoned, yet conflicting, conclusions of various decision-makers as to whether the plaintiff suffered from a "markedly limiting ability to walk and stand" – we cannot say that the district court abused its discretion in finding that the government's position throughout this litigation was "substantially justified." The district judge thus did not err in denying Peck's request for fees under the Equal Access to Justice Act.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.