*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
>                             *Plaintiff-Appellee,*
>
>     *v.*
>
> CERTAIN LAND SITUATED IN THE CITY OF
> DETROIT, ROY LANCASTER, NASH P.
> SOGOIAN, TREASURY DEPARTMENT OF THE
> CITY OF DETROIT, INFINITY OUTDOOR, INC.,
>                                 *Defendants,*
>
> DETROIT INTERNATIONAL BRIDGE COMPANY,
>                       *Defendant-Appellant.*

No. 09-1640

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 79-73934; 96-75494; 96-75495; 01-70391
Gerald E. Rosen, Chief District Judge.

Argued: January 20, 2011

Decided and Filed: February 2, 2011

Before: MARTIN and STRANCH, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Craig L. John, Plymouth, Michigan, for Appellant. Jeffrey M. Tapick, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Craig L. John, Plymouth, Michigan, Joseph A. Doerr, Thomas J. Murray, DYKEMA GOSSETT, Bloomfield Hills, Michigan, for Appellant. Jeffrey M. Tapick, Aaron P. Avila, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  After protracted litigation over the United States's condemnation of its property near the terminus of the Ambassador Bridge, the Detroit International Bridge Company appeals the district court's denial of its motion for attorneys' fees and costs under the Equal Access to Justice Act.  The district court held that International Bridge Company was not the prevailing party and, therefore, is not entitled to recover fees and costs.  We **AFFIRM** the decision of the district court.

**I.**

This controversy began in 1977 and several years ago we remarked that it "calls Dickens' *Bleak House* to mind."  450 F.3d 205, 206 (6th Cir. 2006).  At this point the procedural history is far too lengthy to even attempt to summarize.[1]  However, this appeal involves only whether International Bridge Company is entitled to attorneys' fees and costs, which is an independent issue and does not require detailed knowledge of the immense procedural history.  Although we have previously underestimated the persistency of this litigation, it appears that this appeal will be the final epilogue to this long running dispute.

In 1979 the United States brought an action to acquire certain parcels of land near the Ambassador Bridge in Detroit, Michigan in order to expand its customs facilities. This privately owned bridge connects Detroit and Ontario, Canada and carries a substantial amount of commercial traffic.  International Bridge Company owns the bridge as well as several parcels of land near the bridge's Detroit terminus.

———————————

[1]The history of this litigation has been detailed in a number of published opinions from this Court. For a more detailed description of the proceedings see generally *United States v. Certain Land*, 450 F.3d 205 (6th Cir. 2006).

The parties could not agree on "just compensation" for the condemned land. After nearly thirty years of pre-trial proceedings and failed negotiations, in 2002 the district court held a jury trial on the issue of just compensation. At trial, the United States's appraiser, Donald Treadwell, valued the condemned property at $923,000.

International Bridge Company presented significantly higher valuations based, in part, on different potential uses for the property. First, International Bridge Company's owner, Manuel J. Moroun,[2] testified that he valued the property at $13 million. However, before Moroun even offered this number, the district court instructed the jury that it could not consider it for the purpose of deciding the ultimate issue of valuation. The court instructed the jury that this figure could only be considered as to what value Moroun personally placed on the land.

Next, International Bridge Company's expert, William P. Walsh, testified that the value of the condemned property was $8,150,000 (or fifty dollars per square foot) based on a highest and best use that was "integrated" with the Ambassador Bridge. After Walsh testified, the United States renewed an earlier motion to exclude testimony based on "integrated" use, which the district court eventually granted. The court then instructed the jury that it "may not take into consideration the value of the property when it is used in conjunction with the bridge or together with the bridge itself," because that is not a compensable use. Specifically, the court remarked that the "$8 million figure" from Walsh could not be considered.

International Bridge Company then recalled Walsh on the last day of trial. This time Walsh testified that the property was worth $6,147,261 (or thirty-seven dollars per square foot) based on the highest and best use of a bonded warehouse or other facility with enhanced value because of its proximity to the bridge.

Ultimately the jury determined that just compensation for the condemned property was $4,098,174 (approximately twenty-five dollars per square foot). This

---

[2]Moroun is technically the owner of CenTra, International Bridge Company's corporate parent.

award is slightly more than $500,000 over the mean value of the United States's valuation and Walsh's non-integrated use valuation.

After several unsuccessful appeals, International Bridge Company filed a motion to recover attorneys' fees and costs under the Equal Access to Justice Act. International Bridge Company claims $2,822,682.30 in attorneys' fees and expenses. The district court denied the motion, holding that International Bridge Company was not the prevailing party as defined by the Act because the jury's award was closer to the valuation provided by the United States than the highest valuation provided by International Bridge Company. In determining the prevailing party, the district court relied on Moroun's subjective valuation of the property and Walsh's integrated use valuation. Alternatively, the district court held that International Bridge Company was not entitled to a fee award because the United States's position was substantially justified. On appeal International Bridge Company challenges both of these conclusions.

## II.

### A.     The Equal Access to Justice Act.

The Equal Access to Justice Act provides an exception from the general rule that each party to a lawsuit pays his or her own legal fees, and authorizes the payment of costs and fees to the "prevailing party" in an action against the United States. 28 U.S.C. § 2412(d)(1)(A) (2006); *see Scarborough v. Principi*, 541 U.S. 401, 405 (2004). The Act was designed to reduce the deterrent effect of high legal fees that may keep many individuals and other entities from litigating against government interference. H.R. Rep. 99-120, at 4 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 132-33. However, even if a party prevails in an action against the United States, if the court finds "that the position of the United States was substantially justified or that special circumstances make an award unjust," fees and costs should not be awarded. 28 U.S.C. § 2412(d)(1)(A).

In a condemnation action, it is not always immediately obvious who prevailed. However, the Act makes clear that even if the United States succeeds in taking

possession of the land, the landowner may still be the prevailing party.  The Act, *id*.
§ 2412(d)(2)(H), explains that:

> "[P]revailing party", in the case of eminent domain proceedings, means
> a party who obtains a final judgment (other than by settlement), exclusive
> of interest, the amount of which is at least as close to the highest
> valuation of the property involved that is attested to at trial on behalf of
> the property owner as it is to the highest valuation of the property
> involved that is attested to at trial on behalf of the Government.

This definition provides that the prevailing party is the one who provided the valuation
estimate in court that is closest to the jury's award.[3]  If the award is exactly half-way
between the valuations, the landowner is the prevailing party.  Congress specifically
noted that the prevailing party determination is based solely on values testified to in
court and has no application to settlement negotiations or agreements.  H.R. Rep. 99-
120, at 18, *reprinted in* 1985 U.S.C.C.A.N. at 147.

Here, the district court held that International Bridge Company was not the
prevailing party because the jury award was closer to the United States's valuation than
the highest valuation provided by International Bridge Company.  Based on either
Moroun's $13 million dollar subjective value or Walsh's $8,150,000 integrated use
figure, the jury award was closer to the value put forth by the United States.  However,
International Bridge Company argues that those two values should not be used in
determining the prevailing party because the district court instructed the jury that it could
not consider them.  Excluding those two values from the prevailing party calculus would
make International Bridge Company the prevailing party.

---

[3]Although not relevant in this case because the United States only offered one valuation,
comparing the *highest* valuation offered by the United States to the *highest* valuation offered by the
landowner is somewhat bizarre in light of Congress's intent.  The statute is designed, in part, to deter
parties from offering extreme valuations and bring their valuations at trial closer together.  H.R. Rep. 99-
120, at 18, *reprinted in* 1985 U.S.C.C.A.N. at 147.  Considering the highest valuation offered by the
landowner furthers this purpose by discouraging the landowner from offering inflated values.  However,
determining the prevailing party based on the highest valuation offered by the United States does nothing
to prevent the United States from offering an extremely low valuation of the property together with a
higher, more reasonable valuation.  It seems that Congress's intent may be better realized if the prevailing
party is determined by comparing the *highest* value offered by the landowner to the *lowest* value offered
by the United States.

**B.        Whether International Bridge Company was the prevailing party.**

This Court reviews interpretations of the Act and, therefore, determinations of the prevailing party de novo. *See Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009). We endeavor to interpret statutes in light of the straightforward and commonsense meaning of the terms used within. *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010); *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000). "When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end." *Bartlik v. U.S. Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995). Because the Act is a waiver of sovereign immunity, we must strictly construe the statute in favor of the United States. *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

A plain reading of the Act compels the conclusion that valuations testified to at trial be used in performing the prevailing party calculation even if the finder of fact is not permitted to consider them. Attested means only that the fact is affirmed to be true. *Black's Law Dictionary* 147 (9th ed. 2009); *Oxford English Dictionary Online*: attested, http://www.oed.com (last visited Jan. 23, 2011) (defining "attested" as "sworn, vouched for, certified, [or] proved"). Attested to does not carry with it an express or implied requirement that the item testified to be properly received in evidence. Consistent with the text of the statute, Moroun's $13 million subjective valuation was a valuation "attested to at trial," even though the district court instructed the jury not to consider it. A landowner's valuation of the condemned property may be used in determining the prevailing party. *See United States v. 2.6 Acres of Land*, 251 F.3d 809, 812 (9th Cir. 2001) (determining the prevailing party in a condemnation action based on the valuation proposed by the landowner). Therefore, the highest value attested to on behalf of International Bridge Company was the $13 million figure offered by Moroun. Based on this, the district court correctly concluded that International Bridge Company was not the prevailing party.

We cannot substitute our judgement for that of Congress's and rewrite the statute even though determining the prevailing party based on values that the finder of fact was

prohibited from considering is somewhat inconsistent with how we typically treat excluded evidence. We assume that juries listen to and follow instructions, and can properly refuse to consider certain evidence. *See, e.g.*, *Frazier v. Cupp*, 394 U.S. 731, 735-36 (1969) (noting that limiting instructions are effective and juries can be expected to follow them). Additionally, when reviewing convictions and civil judgments, we do not consider evidence that was excluded or improperly admitted. *See Tamaraz v. Lincoln Elec. Co.*, 620 F.3d 665, 676 (6th Cir. 2010); *United States v. Lopez-Medina*, 461 F.3d 724, 749 (6th Cir. 2006). In this case, the district court instructed the jury that it could not consider either Moroun's valuation or Walsh's integrated use valuation in determining just compensation for the condemned properties. Because of this instruction, we expect that the jury's award was not based on either of these valuations. Similarly, we would not consider these values if we were asked to consider whether the jury's award is supported by sufficient evidence. However, we are not reviewing the jury's decision. Instead, we are applying a specific provision in the Equal Access to Justice Act. Congress's decision to define the prevailing party based on values "attested to at trial" requires that we consider these excluded values in determining the prevailing party even though we might not in other contexts.

Although Congress recognized some of the potential problems with determining the prevailing party in an eminent domain proceeding, the natural course of evidentiary rulings during a trial may lead to results that appear inconsistent with Congress's intent and leave the statute susceptible to exploitation. Putting aside Moroun's valuation, in this case, the United States filed a motion *in limine* to exclude valuations based on integrated use in 1982. However, until the district court held that the integrated use was not legally compensable, International Bridge Company had to present evidence about the value of the parcels based on integrated use on the chance that it would be allowed to recover on that theory. Presumably, International Bridge Company would not have offered Walsh's valuation based on integrated use if the district court had made this ruling earlier. With an early ruling, International Bridge Company likely would have only offered testimony relating to the heightened value based on proximity to the bridge. Because the district court instructed the jury not to consider Walsh's integrated use

valuation, we can assume that the jury would have returned the same award. In that event, even though International Bridge Company would not have received any additional funds, it may have been the prevailing party under the definition in the Act.

In this case, there is no indication that the district could have, or should have, ruled on the integrated use question earlier. The district court's decision to postpone ruling until it heard the evidence was entirely proper. However, because the statute does not provide an exception for values testified to but excluded from evidence, it requires that Walsh's integrated use valuation be used to determine the prevailing party. As such, when a district court does not make certain evidentiary rulings until the presentation of evidence begins, which may be perfectly permissible as it was in this situation, the "attested to at trial" limitation may effectively require parties like International Bridge Company to gamble. The landowner may have to choose between seeking compensation on a new legal theory, in this case based on the parcels' integrated value, and potentially recovering fees and costs. While Congress may not have intended such a result, we cannot redraft the statute based on that possibility.

Were we charged with developing a metric to determine the prevailing party in a condemnation action, we might elect to do so differently. However, we must apply the statute as written. Although it does not lead to an inequitable result in this case, the Act's definition of prevailing party based on valuations attested to at trial may have unintended consequences because it includes valuations testified to but ultimately not accepted into evidence. Therefore, based on the text of the Act, the jury's award of $4,098,174 was closer to the United States's valuation of $923,000 than Moroun's $13 million valuation, and International Bridge Company was not the prevailing party.

**C.     Whether the United States's Position was Substantially Justified.**

Because we conclude that International Bridge Company was not the prevailing party we need not consider whether the United States's position was substantially justified. We express no opinion as to this portion of the district court's alternate holding.

**III.**

Consistent with the text of the Act, the district court correctly determined that International Bridge Company was not the prevailing party because its highest valuation attested to at trial was further from the jury's award than the United States's valuation. Therefore, the district court's decision denying International Bridge Company's motion for fees and costs under the Equal Access to Justice Act is **AFFIRMED**.