Igor BERISHEV, Plaintiff,

v.

Michael CHERTOFF, Emilio T. Gonzales, Denis Riordan, and Robert S. Mueller, Defendants.

Civil Action No. 06–11746–WGY.

United States District Court, D. Massachusetts.

May 11, 2007.

Gregory Romanovsky, Law Office of Boris Maiden, Brookline, MA, for Plaintiff.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

The plaintiff Igor Berishev ("Berishev"), a native of Russia and a legal permanent resident of the United States, brings this motion for attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Pl. Mot. for Attorneys' Fees [Doc. No. 6].

On March 21, 2005, after completing the five-year physical presence requirement for naturalization pursuant to 8 U.S.C. § 1427(a), Berishev applied for naturalization with the United States Citizenship and Immigration Services ("USCIS"). On August 15, 2005, USCIS examined him in connection with his application. On September 28, 2006, after USCIS failed to act for over 18 months, Berishev filed an action in this court for a writ of mandamus under 8 U.S.C. § 1447(b).

The defendants never filed an answer or response to this complaint. Instead, the parties filed a joint motion for an extension of time on December 15, 2006, with USCIS stating that the additional time might moot the issues raised in the complaint. Joint Mot. to Extend [Doc. No. 3]. This Court allowed that motion three days later. On January 30, 2007, the parties filed a joint motion to remand the case to USCIS to allow the agency to grant Berishev's appli-

cation. Joint Mot. to Remand [Doc. No. 4]. This Court allowed that motion and entered an Order of Remand on February 1, 2007. Order of Remand [Doc. No. 5]. The Order dismissed the case without prejudice to the right of either party to reopen the action if adjudication of Berishev's naturalization application did not occur by March 1, 2007. *Id.*

Upon remand Berishev's application was promptly granted, and he was sworn in as a United States citizen on February 22, 2007.

On March 23, 2007, Berishev filed this motion for attorneys' fees. This Court allowed that motion prior to the filing of the defendants' memorandum in opposition. In light of this error, the defendants' motion to vacate the order granting attorneys' fees was allowed. Now, with the matter fully briefed by both parties, the merits are addressed and adjudged.

## II. DISCUSSION

A party seeking attorneys' fees under the EAJA must establish that he constitutes a "prevailing party." 28 U.S.C. § 2412(a)(1). Once this threshold inquiry is established, the burden shifts to the government to demonstrate that its position was "substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1).

The government argues that Berishev does not meet the definition of a "prevailing party," and, even if he does, that the government's position substantially justifies the resulting delay. Defs. Opp'n Mem. to Pl. Mot. for Attorneys' Fees [Doc. No. 8] ("Defs. Opp'n Mem.") at 3–12.

### A. Prevailing Party

■ The first and threshold issue is whether Berishev constitutes a "prevailing party" under section 2412(a)(1). The Supreme Court, in *Buckhannon Board and*

*Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), defined this term as employed in numerous fee-shifting statutes. *Id.* at 602, 121 S.Ct. 1835. A "prevailing party" is the beneficiary of a "material alteration of the legal relationship of the parties." *Id.* at 604 (citing *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Such a material alteration includes judgments on the merits, as well as consent decrees that memorialize settlement agreements. *Id.* Consent decrees, though often silent on the issue of liability, are included because they constitute a court-ordered change in the legal relationship. *Id.*

The Supreme Court focused on this aspect of a judicially sanctioned change to define the outer parameters of the term "prevailing party." It would not be extended so far as to include a "catalyst theory," whereby a party seeks to recover due to a defendant's "voluntary change in conduct" that "lacks the necessary judicial *imprimatur* on the change." *Id.* at 605, 121 S.Ct. 1835 (emphasis in original).

The First Circuit, in *Smith v. Fitchburg Public Schools,* 401 F.3d 16 (1st Cir.2005) interpreted *Buckhannon Board and Care Home, Inc.* as requiring two elements: (1) a "material alteration of the legal relationship of the parties," along with (2) a "judicial imprimatur on the change." *Smith,* 401 F.3d at 22.

■ There is no question that the first element is satisfied in this case. The adversarial action that resulted in a conciliatory order of remand led to Berishev's change in status from a legal permanent resident to a United States citizen. *See Aronov v. Chertoff,* No. 06–11526, at 3

(D.Mass. January 30, 2007) (Gertner, J.) (unpublished opinion).

Thus the dispositive question is whether the order of remand entered by this Court constitutes "judicial imprimatur" on that change. It ought be noted that a narrow and strict interpretation of *Buckhannon Board and Care Home, Inc.* would preclude inclusion of such an order under the definition of "prevailing party" because it constitutes neither an enforceable judgment on the merits nor a formal consent decree. *See* 532 U.S. at 604, 121 S.Ct. 1835. The First Circuit has not, however, spoken definitively as to whether such a narrow interpretation is required. *See Smith*, 401 F.3d at 23 (holding that it need not reach a decision on "whether a party could prevail under *Buckhannon* in the absence of a consent decree or a final judgment on the merits.") In *Smith*, the First Circuit left the issue open as to whether orders dismissing a case could constitute the functional equivalent of a consent decree. *Id.* at 24 (holding that the appellant waived this argument).

The government argues that the order of remand in this case must be considered a "voluntary change in conduct," and falls outside of the *Buckhannon* definition of "prevailing party." Def. Opp'n Mem. at 5; *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835. *Buckhannon* does exclude voluntary conduct from rendering a party "prevailing," but it does so within the context of the "catalyst theory" whereby a plaintiff reaches "the 'sought-after destination' without obtaining *any* judicial relief." *Id.* at 605–06, 121 S.Ct. 1835 (emphasis added).

Here, however, judicial relief in the form of a court order from this Court was required and obtained. It cannot be argued that Berishev's ultimate "destination" was obtained without *any* judicial relief from this Court. The voluntary conduct at issue in this case does not constitute a voluntary dismissal accomplished as of right. Such a distinction is amplified by considering the difference between voluntary dismissals under Federal Rules of Civil Procedure 41(a)(1) and those accomplished under 41(a)(2). *See Johnson v. Pringle Dev., Inc.*, No. 5:05–cv37–Oc10GRJ, 2006 WL 2189542, *1 (M.D.Fla. Aug. 1, 2006); *TRF Music Inc. v. Alan Ett Music Group, LLC*, No. 06 Civ. 0349(PKC), 2006 WL 1376931, *2 (S.D.N.Y. May 18, 2006). If a joint stipulation for dismissal is made pursuant to Rule 41(a)(1)—with or without prejudice—it is effective upon filing and neither requires nor allows judicial action to effectuate the dismissal. *Johnson*, 2006 WL 2189542 at *2. Such a "voluntary dismissal 'lacks the judicial *imprimatur*' to render [a] prevailing part[y]." *TRF Music Inc.*, 2006 WL 1376931 at *2 (citing *Buckhannon*, 532 U.S. at 606, 121 S.Ct. 1835).

In contrast, a dismissal under Rule 41(a)(2) requires substantial judicial action, including a response to a written motion, the ability to fashion and apply conditions, and the exercise of discretion. *Johnson*, 2006 WL 2189542 at *2. The need for this level of judicial action is deemed enough to meet the definition of judicial imprimatur. *Id.*

The distinction between voluntary dismissals under Rule 41(a)(1) and Rule 41(a)(2) does not directly apply to the joint motion for remand that this Court faces. It is, however, an instructive distinction. Here, the parties could not voluntarily agree to remand the case before this Court. Instead, they were required to seek a remand through a written motion. This Court had the discretion to allow or deny that motion. If the motion had been denied, this Court would have reached the merits of the petition. The motion was, however, allowed through an enforceable order of this Court. The order remanded the action and dismissed it without prejudice, but also contained a condition that

allowed either party to reopen the action after March 1, 2007 had the administrative adjudication of Berishev's application for naturalization not been completed.

As a result of the need for a written motion for remand, this Court's discretion to act upon that motion as it saw fit, and its discretion to apply conditions on the remand, this Court finds sufficient judicial imprimatur to satisfy the "prevailing party" requirement of the statute. *See Doe v. Boston Public Schs.*, 358 F.3d 20, 24 (1st Cir.2004) (defining "judicial imprimatur" as requiring a party to achieve a "court-ordered" change in the legal relationship).

Such a decision comports with the decisions of other district courts in the District of Massachusetts that have addressed this legal issue on similar facts. *See Aronov*, No. 06–11526, at 4 (holding that an order of remand so that USCIS could grant the plaintiff's application for naturalization satisfied the requirement for judicial imprimatur); *Smirnov v. Chertoff*, No. 06–10563–RWZ, at 4 (D.Mass. Jan. 18, 2007) (Zobel, J.) (unpublished opinion) (same); *Simonovskaya v. Chertoff*, No. 06–11745–RWZ, 2007 WL 210391, at *1 (D.Mass. Jan. 26, 2007) (Zobel, J.) (concluding without discussing that the plaintiff party to a joint motion to remand constituted a prevailing party); *Shalan v. Chertoff*, No. 05–10980–RWZ, 2006 WL 3307512, *1 n. 1 (D.Mass. Nov. 14, 2006) (Zobel, J.) (noting that the parties did not dispute that the plaintiff satisfied the definition of a prevailing party). It also comports with other circuits that have held *Buckhannon's* listing of an "enforceable judgment on the merits" and a "court-ordered consent decree" as non-exclusive examples of orders with sufficient judicial imprimatur. *See, e.g., Carbonell v. Immigration and Naturalization Serv.*, 429 F.3d 894, 898–99 (9th Cir.2005) (extending the definition to include a voluntary stipulation of dismissal that was incorporated into an order).

## B. Substantially Justified

While "prevailing parties" under the EAJA are generally entitled to attorneys' fees, the Act allows the government to avoid such fee-shifting where its position was "substantially justified" or where "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1); *see Scarborough v. Principi*, 541 U.S. 401, 403, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (placing the burden to prove this exemption on the government); *United States v. Yoffe*, 775 F.2d 447, 450 (1st Cir.1985) (applying a preponderance of the evidence standard to the government's burden). The government's position will be "substantially justified" where it "had a reasonable basis both in law and in fact." *Pierce v. Underwood*, 487 U.S. 552, 563, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The test for whether the government meets this standard is "essentially one of reasonableness," *Id.* at 564, 108 S.Ct. 2541, but is not so strict as to require the government's position to be "justified to a high degree," *Id.* at 565, 108 S.Ct. 2541; *Yoffe*, 775 F.2d at 449 (adopting a reasonableness test).

The First Circuit, in *United States v. Yoffe*, broke down this reasonableness inquiry into three considerations: (1) "did the government have a reasonable basis for the facts alleged," (2) "did it have a reasonable basis in law for the theories advanced," and (3) "did the facts support its theory." 775 F.2d at 450. Though these further inquiries provide helpful gloss on the scope of the reasonableness test, they are of little help on this case.

The government took no litigation position in this case. It never challenged Berishev's demands, but simply worked to effectuate them. On this motion, the government argues what may be termed a pre-litigation position that the one and a half year delay in the processing of Berishev's application was substantially justified

because federal law prohibited USCIS from adjudicating Berishev's application until it received confirmation that the FBI background check was completed. Def. Opp'n Mem. at 10.

This argument fails for two reasons. First, it incorrectly characterizes the law that governs the naturalization process. The process for naturalization begins with an application. *See* 8 U.S.C. § 1446(a)-(b); 8 C.F.R. § 334.2. After an application is filed, an "investigation" of the applicant is conducted. 8 C.F.R. § 335.1. The investigation period includes a criminal background check conducted by the Federal Bureau of Investigation ("FBI") and must be completed before the USCIS may begin an "examination" of the applicant. 8 C.F.R. § 335.2(b); *Shalan*, 2006 WL 3307512 at *3. If USCIS fails to make a determination within 120 days from the start of the examination, the applicant may sue for mandamus in federal district court. 8 U.S.C. § 1447(b). Thus, the statutory and regulatory framework anticipates the need for a period of time to allow for a FBI background check and then separately provides a 120-day window for the USCIS to render a decision. This statutory framework precludes an argument that the time required to complete an FBI background check may justify **both** a delay between an investigation and an examination and one between an examination and a final determination. *See Shalan*, 2006 WL 3307512 at *2 ("It does not matter whether blame for the delay is properly ascribed to the FBI or USCIS; rather the delay renders the government's position not 'substantially justified.' ").

Second, even if a delay in conducting a FBI background check may, under some circumstances, present a valid justification for the USCIS's failure to reach a determination within the 120-day window, it does not do so in this case. *Compare Id.* at *3 (holding a delay of three months past the 120-day window unreasonable) *and Aronov*, 06–11526 at 5–7 (holding a delay of 15 months past the 120-day window not substantially justified) *with Simonovskaya*, 2007 WL 210391 at *2 (holding one day past the 120-day window not an unreasonable delay). The government fails to detail any special circumstances attributable to Berishev's application that justify the one and a half year delay. This is also not a case where Berishev filed a petition for mandamus on the 121st day after his examination. *See Simonovskaya*, 2007 WL 210391 at *2. Instead, Berishev waited over 15 months after the statutory deadline to file the petition. *See Aronov*, 06–11526 at 5–7.

To accept the government's argument that its conduct here was "substantially justified" would unduly expand the exception to the general fee-shifting rule for prevailing parties. *See* 28 U.S.C. § 2412(d)(1). The government bears the burden of proof to justify this exception. *Scarborough*, 541 U.S. at 403, 124 S.Ct. 1856; *Yoffe*, 775 F.2d at 450. This burden cannot be borne by a general appeal to delays attributable to the FBI background check process. Were this not so, the 120-day statutory window framed by 8 U.S.C. § 1447(b) would be of no effect. This is especially true here, where the applicant does not seek an unreasonably strict application of the statutory command and where no indication exists that the applicant could have succeeded absent the petition for mandamus.

## III. CONCLUSION

Accordingly, Berishev's motion for attorneys' fees [Doc. No. 6] in the amount of $3,839.02 is ALLOWED.

SO ORDERED.