**Charles BICE, Executor of the Estate of Martha Bice, deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 02–784C.

United States Court of Federal Claims.

Oct. 3, 2008.

Michael L. McGonnigal, Columbus Community Legal Services, Washington, D.C., counsel of record for Plaintiff.

J. Reid Prouty, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., counsel of record for Defendant. With him on the briefs were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Assistant Director. Rafael A. Madan and Jason Cooley, Office of Justice Programs, Of Counsel.

Lauren A. Weeman, Law Clerk.

Pasha Majdi, Intern.

## OPINION & ORDER

BASKIR, Judge.

Currently before the Court is Plaintiff's Application for Attorney Fees filed pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Government moves to dismiss the Application on the ground that a provision set forth in the Consolidated Appropriations Act of 2008, Pub.L. No. 110–161, 121 Stat. 1844 (2007), strips this Court of jurisdiction to entertain the Application. The Government argues in the alternative that Plaintiff is not entitled to attorney fees. **For the reasons stated below, we DENY the Government's Motion to Dismiss and GRANT Plaintiff's EAJA Application.**

## BACKGROUND

On July 12, 2002, Plaintiff Charles Bice filed a complaint in this Court as the widower and executor of the estate of Martha Bice, a deceased firefighter. Plaintiff filed suit to appeal a decision of the Bureau of Justice Assistance (BJA) denying his application for survivor benefits under the Public Safety Officers' Benefit Act of 1976 (PSOBA), Pub.L. No. 94–430, 90 Stat. 1346 (1976) (codified at 42 U.S.C. § 3796), which was filed in

December 1997. In an opinion issued on July 29, 2004, we reversed the BJA's decision and remanded the case to the BJA for further proceedings consistent with our opinion. *Bice v. United States*, 61 Fed.Cl. 420 (2004) (*Bice I*).

Upon remand, the BJA again denied Plaintiff's PSOBA claim. On March 7, 2006, Plaintiff filed a Motion for Judgment on the Administrative Record in this Court to appeal BJA's decision. On September 6, 2006, we ruled once again in favor of Plaintiff on the merits. We found that the smoke inhalation suffered by Mrs. Bice while on duty was a direct and proximate cause of her death and that Plaintiff was therefore entitled to survivor benefits under the PSOBA. Accordingly, we reversed the BJA's redetermination on remand and ordered final judgment in favor of Plaintiff in the amount of $100,000.00. *Bice v. United States*, 72 Fed. Cl. 432 (2006) (*Bice II*). The Government appealed our decision to the U.S. Court of Appeals for the Federal Circuit, which summarily affirmed our ruling on July 12, 2007. At all times during the litigation of Plaintiff's claim before this Court and his appeal to the Federal Circuit, Plaintiff was represented on a *pro bono* basis by Columbus Community Legal Services, a clinical education program run by the Columbus School of Law at the Catholic University of America in Washington, D.C.

On October 9, 2007, Plaintiff filed an Application for Attorney Fees with the Federal Circuit pursuant to the EAJA. Plaintiff sought $7,195.20 for legal services rendered in connection with his successful defense before the Federal Circuit of the Government's appeal from the judgment of this Court and for expenses related to preparing the EAJA Application. Fed. Cir. EAJA App. at 1 (Attachment A to Defendant's Request for Stay of Plaintiff's Request for Fees (Def. Mot. to Stay)). The Federal Circuit summarily denied Plaintiff's EAJA Application on October 23, 2007, without requesting a response from the Government and without stating the basis for its denial. Plaintiff filed a Motion for Reconsideration with the Federal Circuit on November 6, 2007. The Federal Circuit summarily denied Plaintiff's Motion for Re-

consideration on November 26, 2007, again without requesting a response from the Government or stating the grounds for its decision.

On October 10, 2007, one day after filing his EAJA Application with the Federal Circuit, Plaintiff timely filed an Application for Attorney Fees in this Court. Plaintiff seeks $10,037.77 in fees for legal services rendered in his successful action for survivor benefits under the PSOBA in this Court and for fees related to preparing the COFC EAJA Application. COFC EAJA App. at 1.

The Government moved this Court to stay proceedings pertaining to Plaintiff's COFC EAJA Application on November 13, 2007. *See* Def. Mot. to Stay at 1. The Government sought this stay on the ground that Plaintiff's Motion for Reconsideration of the Federal Circuit's denial of attorney fees in that court was still pending. *Id.* The Government's Motion to Stay was rendered moot on November 26, 2007, when the Federal Circuit summarily denied Plaintiff's Motion for Reconsideration.

Thereafter, on January 4, 2007, the Government moved this Court to dismiss Plaintiff's COFC EAJA Application for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's Motion to Dismiss COFC EAJA Application (Def. Mot. to Dismiss) at 1. We turn now to the Government's Motion to Dismiss, then address the merits of Plaintiff's COFC EAJA Application.

## DISCUSSION

### I. The Government's Motion to Dismiss

#### A. Standard of Review

RCFC 12(b)(1) governs dismissal of claims for lack of subject matter jurisdiction. When a defendant challenges this Court's jurisdiction pursuant to RCFC 12(b)(1), the plaintiff must show by a preponderance of the evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv. (Reynolds)*, 846 F.2d 746, 748 (Fed.Cir.1988). In deciding the motion, the Court must accept as true any undisputed allegations of fact made by

the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Reynolds,* 846 F.2d at 747.

### B. The Consolidated Appropriations Act of 2008

■ The Government moves to dismiss Plaintiff's EAJA Application invoking a specific provision of the Consolidated Appropriations Act of 2008 (2008 CAA). *See* Def. Mot. to Dismiss at 1–2. The 2008 CAA, which became effective on December 26, 2007, grants "exclusive jurisdiction" over appeals of final decisions of the BJA to the Federal Circuit, including "any related matters, pending." Division B, Title II of the 2008 CAA states:

> Provided, That, *hereafter,* funds available to conduct appeals under section 1205(c) of the [Omnibus Crime Control and Safe Streets Act of] 1968[ ], which includes all claims processing, shall be available also for the same under subpart 2 of such part L and under any statute authorizing payment of benefits described under subpart 1 thereof, and *for appeals from final decisions of the Bureau [of Justice Appeals] (under such part or any such statute) to the Court of Appeals for the Federal Circuit, which shall have exclusive jurisdiction thereof (including those, and any related matters, pending),* . . . .

121 Stat. 1844, 1912 (codified at 42 U.S.C. § 3796c–2) (emphasis added). The Government argues that the plain language of this legislative rider vests the Federal Circuit with exclusive jurisdiction not only of appeals of final BJA decisions, but also of EAJA Applications which are, in the Government's view, "related matters, pending." Def. Mot. to Dismiss at 3 ("Here, Congress has provided that the withdrawal of the Court of Federal Claims jurisdiction applies to all pending matters related to PSOBA appeals."). The Government notes that "Congress, of course, possesses the authority to withdraw this Court's jurisdiction over pending cases, if it so chooses." *Id.* at 3 (citing *Bruner v. United States,* 343 U.S. 112, 116, 72 S.Ct. 581, 96 L.Ed. 786 (1952)).

We do not disagree in general with the Government's interpretation of this rider. Rather, we take issue with its application to this case. As we read it, the rider precludes our jurisdiction of new appeals of final BJA decisions—*and* any related matters, pending—filed after the effective date of the 2008 CAA. The rider also precludes our jurisdiction of appeals of final BJA decisions that were pending in our Court as of the effective date, *and* of any matters related thereto which were also pending.

The rider does not however disturb our jurisdiction over the instant Application. We properly entertained and ruled on the merits of Plaintiff's appeal of the BJA's second denial of his PSOBA claim on September 6, 2006. Our decision was summarily affirmed by the Federal Circuit on July 12, 2007. Plaintiff's BJA appeal to this Court was therefore completed and not pending when the 2008 CAA became effective on December 26, 2007. The CAA could not, and in fact does not, affect our jurisdiction over the completed BJA appeal.

The Government is correct to point out that Plaintiff's EAJA Application was pending as of the effective date of the 2008 CAA. However, we do not believe that the merits of the EAJA Application Plaintiff filed in this Court can be separated from the merits of his concluded BJA appeal before us. We note first that the language of the 2008 CAA rider is inclusive. The rider explicitly provides that the Federal Circuit shall have exclusive jurisdiction of direct appeals of final decisions of the BJA "*and* [of] any related matters, pending." Use of the inclusive word "and" indicates that this Court is divested of jurisdiction of "related matters, pending" only where we have also been divested of jurisdiction to entertain the merits of the BJA appeal. We were not divested of the *Bice* appeal.

Our interpretation of the rider is supported by a "gloss" that has been placed on the language of the EAJA by federal courts. The EAJA provides that "[u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, . . . to the prevailing party in any civil action brought by or against the United States . . .

*in any court having jurisdiction of such action."* 28 U.S.C. § 2412(b) (emphasis added). Courts entertaining EAJA Applications for the award of fees associated with both the trial and appellate phases of a case have concluded that "the appropriate court for resolution of an EAJA attorney's fees petition is the court before which the attorney performed the work sought to be recompensed." *Washington v. Heckler,* 608 F.Supp. 1286, 1288 (E.D.Pa.1985) (*Washington*); *see also McCarthy v. Bowen,* 824 F.2d 182, 183 (2d Cir.1987) ("An application for appellate fees under EAJA should [ ] always be presented to the court of appeals."); *United States v. Estridge,* 797 F.2d 1454, 1459–60 (8th Cir.1986) (treating separately plaintiff's EAJA Application to the district court for attorney's fees associated with trial and EAJA Application to the court of appeals for fees incurred while defending against the Government's appeal); *Martin v. Heckler,* 754 F.2d 1262, 1265 n. 6 (5th Cir.1985) (treating applications for attorney's fees filed in trial court and in court of appeals separately and stating, "[i]n some cases, applications for fees and expenses should be considered in the district court in the first instance. In others, [the court of appeals] may consider them first.").

Federal courts clearly contemplate that an EAJA Application may, and in fact should, be filed in the court which entertained the merits of the underlying claim. As the above-cited precedent confirms, EAJA Applications associated with trial fees are to be filed in the trial court while applications for attorney fees associated with any merits appeal are to be filed in the court of appeals. If we were to accept the Government's interpretation of the 2008 CAA rider, the instant EAJA Application might not be entertained *by any court.* Upon dismissal by this Court, Plaintiff might well be barred from refiling the Application with the Federal Circuit since the 30–day filing window has expired. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses."); *see Scarborough v. Principi,* 541 U.S. 401, 406, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (holding that a curative

amendment to an EAJA Application which was otherwise timely filed is permissible, but suggesting that the 30–day time to file such petition may be jurisdictional).

For the 30–day rule to result in the rejection of Plaintiff's EAJA Application by the Federal Circuit would be a perverse result of a legislative rider the purpose of which—to the extent we can divine a purpose—is to speed up the process of granting benefits under the PSOBA. *See* H.R.Rep. No. 110–240, 2007 WL 2075231, at 67 ("Appropriated funds for PSOB are meant as a clear signal of support for the police, firefighters, and other first responders who devote their lives to our Nation, and the Committee expects that BJA will ensure that the families of the fallen receive the benefit with as little bureaucratic delay as possible."). The effect of the rider is to eliminate one of the two appellate proceedings currently available to a claimant under the PSOBA. Upon enactment of the 2008 CAA, PSOBA claimants may no longer bring appeals of adverse decisions of the BJA to this Court. Rather, their appeals must be filed directly with the Federal Circuit thereby, presumably, expediting the claims process.

Our understanding of the purpose of this legislative rider is supported by Congressional statements suggesting dissatisfaction with the BJA's administration of PSOBA claims. *See* H.R.Rep. No. 110–240, 2007 WL 2075231, at 67 ("The Committee is concerned with the pace that PSOB payments are being made. The men and women who dedicate their lives to the protection of our communities deserve the peace of mind this benefit affords them and their families. Although the Committee has consistently supported PSOB with significant annual appropriations, over the past several years 20 to 30 percent of this appropriation went unspent while the families of those who gave the ultimate sacrifice for our communities were left in doubt as to their future."). In fact, the Senate expressed its dissatisfaction by calling for a GAO review of the administration of the program. S.Rep. No. 110–397, 2008 WL 2502305, at 58.

When final judgment was entered in favor of Plaintiff by this Court on September 6,

2006, he had been waiting almost 10 years for his BJA claim—which was filed with the BJA in December 1997—to be decided. Plaintiff has now waited several months for his EAJA Application to be granted. (Indeed, it appears that the Government took affirmative steps which would have had the effect of making this shift in jurisdiction apply to this case when it sought to stay action by the Federal Circuit on the instant Application which was pending final action in November and December 2007). It is unlikely given the apparent purpose of the 2008 CAA provision that Congress would purposely deny EAJA relief in a case which this Court found demonstrated a studied recalcitrance on the part of the BJA. *See Bice II*, 72 Fed.Cl. at 442.

Furthermore, we note that, of all successful challenges to an adverse BJA ruling, there is only one class of cases that would lose its EAJA rights pursuant to this rider: Specifically, cases where the EAJA Application is still pending but the appeal on the merits has been finally decided. We believe the *Bice* case is the only one in which the CAA rider would result in the denial of trial level EAJA reimbursement.

This Court addressed the merits of Plaintiff's direct appeal of the two final decisions of the BJA. It is therefore this Court which should determine the merits of Plaintiff's application for attorney fees incurred in those proceedings. Principles of fairness and judicial economy do not support a contrary conclusion. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (holding that, as a "general rule," federal courts are "not to apply a statute if its application will impose a retroactive effect on the litigants" because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."); *Washington*, 608 F.Supp. at 1288–89 ("For a [trial] court to make [ ] a determination [that the Government's position was not substantially justified], the [trial] judge would [ ] have to assess the merits of the [G]overnment's arguments on appeal.... [Which would], in turn, [ ] require a review of appellate briefs [ ] then

an evaluation of those briefs in light of the court of appeals' opinion. Such a process would involve needless duplication of the court of appeals' consideration of the [G]overnment's briefs....").

**Accordingly, we find that we have jurisdiction to entertain Plaintiff's COFC EAJA Application. The Government's Motion to Dismiss is therefore DENIED.**

## II. Plaintiff's COFC EAJA Application

Satisfied that we have jurisdiction, we turn now to the merits of the instant Application. The EAJA provides that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Government opposes the award of attorney fees to Plaintiff. First, the Government argues that Plaintiff's COFC EAJA Application is precluded by principles of *res judicata.* Def. Opp. at 3. Second, the Government contends that Plaintiff is not entitled to EAJA fees for the uncompensated work of law students. *Id.* at 7. We address each of the Government's objections in turn, then address the statutory requirements that must be met to make an EAJA award.

### A. The Government's Objections to the Award of Fees

#### 1. *Res Judicata* Effect of the Federal Circuit's Denial of Fees

##### a. Multiple EAJA Applications

■ The Government contends that Plaintiff's COFC EAJA Application is precluded by principles of *res judicata.* This argument has two parts. The Government contends as a threshold matter that the instant Applica-

tion is precluded because "[t]he EAJA does not contemplate multiple applications for fees in the different United States courts in which a party appears." *Id.* at 3. The principal authority relied on by the Government is *Commissioner v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). *See id.* at 3–4. The Government cites *Jean* for the proposition that the EAJA does not support multiple "substantial justification" findings for different portions of the litigation. *Id.* at 3. The Government concludes on this basis that the EAJA similarly does not support multiple EAJA Applications for different phases of the litigation. *See id.*

The Government has interpreted *Jean* too broadly. The precise question at issue in that case was "whether a prevailing party is ineligible for fees for the services rendered during [an attorney fee request] proceeding." *Jean,* 496 U.S. at 155, 110 S.Ct. 2316. The Supreme Court noted that this question was "narrow," *id.,* and concluded that there can only be a "single finding that the Government's position lack[ed] substantial justification" and that this determination "operates as a threshold for fee eligibility[,]" *id.* at 160, 110 S.Ct. 2316. Contrary to the Government's representation, *Jean* said nothing about the ability of a plaintiff to bring separate EAJA Applications for fees incurred during the trial and appellate proceedings of a case in the court which handled each. The holding in *Jean* is simply that there shall be no additional "substantial justification" finding if the Government appeals the award of fees by a district court. *See id.* at 157, 110 S.Ct. 2316. *Jean* is therefore not relevant here.

In ruling on the Government's motion to dismiss the instant EAJA application, we discussed in detail the "gloss" that federal courts have placed on the EAJA. This gloss suggests that a plaintiff may file separate EAJA Applications in each court that handled different phases of their case. *See supra* Part I.B (citing *Washington v. Heckler,* 608 F.Supp. 1286, 1288 (E.D.Pa.1985); *United States v. Estridge,* 797 F.2d 1454, 1459–60 (8th Cir.1986); *Martin v. Heckler,* 754 F.2d 1262, 1265 n. 6 (5th Cir.1985)); *see also McCarthy v. Bowen,* 824 F.2d 182, 183 (2nd

Cir.1987) ("When fees are sought for attorney's services rendered in connection with an appeal, the court of appeals is the appropriate court to determine whether the position of the United States was 'substantially justified' or whether 'special circumstances make an award unjust.' An application for appellate fees under EAJA should therefore always be presented to the court of appeals."). None of these cases has been overruled. Each supports our conclusion that the EAJA supports multiple applications for attorney fees. The Government's argument to the contrary must therefore be rejected.

### b. Principles of *Res Judicata*

■ The Government further maintains that Plaintiff's COFC EAJA Application must be summarily denied because the Federal Circuit summarily denied the EAJA Application Plaintiff filed in that court and denied Plaintiff's motion for reconsideration of its decision. The Government argues that principles of *res judicata,* which preclude the relitigation of issues already settled by a court, prevent this Court from entertaining Plaintiff's COFC EAJA Application. As the Government points out, "[i]t is well-established that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Def. Opp. at 4 (quoting *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). The Government has invoked the proper legal standard. However, *res judicata* is not applicable here.

First, we note that Plaintiff filed two entirely separate EAJA Applications in this Court and with the Federal Circuit. The Application filed here requests $10,037.77 for attorney fees incurred in bringing two successful appeals in this Court of final BJA decisions and for preparation of the COFC EAJA Application. The EAJA Application filed with the Federal Circuit requested $7,195.20 for fees related to the Government's appeal of this Court's final decision in Plaintiff's favor on the merits and for preparation of that EAJA Application. With regard to issue preclusion, the Supreme Court has stated that:

where the second action between the same parties is upon a *different cause or demand*, the principle of res judicata is applied [ ] narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

*Comm'r v. Sunnen*, 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1876)). *Sunnen* concerned the applicability of *res judicata* principles to the litigation of two cases between the same parties involving income taxes in different taxable years. *Sunnen*, 333 U.S. at 599–600, 68 S.Ct. 715. The Supreme Court stated that "[e]ach [tax] year is the origin of a new liability and of a separate cause of action," *id.* at 598, 68 S.Ct. 715, and that in such a circumstance, principles of *res judicata* (or, collateral estoppel) "must be used with its limitations carefully in mind so as to avoid injustice." *Id.* The Court further stated that the application of these principles is only appropriate where "the legal matter raised in the second proceeding [ ] involve[s] the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." *Id.* at 601–02, 68 S.Ct. 715.

Plaintiff's COFC EAJA Application filed involves a different "set of events or documents" from those at issue in the EAJA Application filed with the Federal Circuit. The instant Application pertains to the recovery of attorney fees incurred during the proceedings before this Court, not those incurred during Plaintiff's defense of the Government's appeal. In addition, we note that the Federal Circuit summarily dismissed the EAJA Application Plaintiff filed there. The Federal Circuit did not include any explanation of the grounds for dismissal. Nor did the Federal Circuit provide any explanation when it summarily denied reconsideration. There is thus no way to know the basis of the Federal Circuit's decision to deny fees related to the appellate phase of Plaintiff's case. The Government concedes this point in its opposition brief. *See* Def. Opp. at 5. However, the Government speculates that there are "only two substantive grounds for the [Federal Circuit's] rejection of [Plaintiff's] fee request[.]" *Id.* The Government posits that the CAFC EAJA Application was rejected either because the Federal Circuit concluded that the Government's position was "substantially justified," or "it determined that fees for unpaid non-attorneys (such as the law students representing [Plaintiff] ) are not recoverable in this circuit." *Id.*

As we discuss below, the Supreme Court has explicitly held that a prevailing plaintiff may recover fees under the EAJA for the work of supervised, non-attorney law students. This therefore could not have been a ground on which the Federal Circuit dismissed Plaintiff's Application. The Federal Circuit could have found that the Government's position was "substantially justified" and denied fees on that basis. However, the Federal Circuit also could have denied fees because there was a procedural error with the filing of the Application, or because it determined that there was some "special circumstance" making award unjust. *See Jean*, 496 U.S. at 158, 110 S.Ct. 2316; 28 U.S.C. § 2412(d)(1)(A). In the absence of any explanation from the Federal Circuit, there is no way to know what led it to deny attorney fees for the appellate phase of this case. This Court cannot be precluded from deciding issues that may or may not have been previously decided by the Federal Circuit.

### 2. Fees for the Supervised Work of Uncompensated Law Students

■ Contrary to the Government's argument, it is proper to award attorney fees for uncompensated work by law students who are supervised by an attorney. Federal Courts have specifically approved the inclusion of fees for paralegals, law clerks, and law students in fee awards under EAJA on the theory that "their work contributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by non-attorneys under supervision for a lower rate, thereby lowering overall litigation costs."

*Cook v. Brown,* 68 F.3d 447, 453 (Fed.Cir. 1995) (citing *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *W. Va. Univ. Hospitals, Inc. v. Casey,* 499 U.S. 83, 99, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)).

Plaintiff was represented on a *pro bono* basis by law students working at Columbus Community Legal Services. The work of these law students was supervised by an attorney. Plaintiff's Application to recover attorney fees under EAJA is therefore proper. *See DiGennaro v. Bowen,* 666 F.Supp. 426, 431 (E.D.N.Y.1987) ("We see no reason to deny a fee award to a legal services organization for the supervised hours reasonably expended by uncompensated law-students working in a clinical facility, despite their receipt of academic credit instead of payment for their services.").

**B. The Merits of Plaintiff's COFC EAJA Application**

Having rejected the Government's arguments opposing the award of attorney fees to Plaintiff, we now turn to the merits of Plaintiff's Application. To recover attorney fees under EAJA, an applicant must show: (1) that they are a "prevailing party"; (2) that the Government's position in the underlying litigation was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application was submitted to the Court within 30 days of final judgment in the action and was supported by an itemized statement. *Jean,* 496 U.S. at 158, 110 S.Ct. 2316; *Knowledge Connections, Inc. v. United States,* 76 Fed. Cl. 612, 614–15 (2007) (citing 28 U.S.C. §§ 2412(d)(1)(A), 2412(d)(2)(B)). We note at the outset that Plaintiff's EAJA application was timely filed and is supported by an itemized billing statement. The Government does not contest the amount of attorney fees sought by Plaintiff, nor does it suggest that existence of any special circumstances barring recovery.

**1. Plaintiff is a "Prevailing Party"**

The EAJA limits the recovery of attorney fees to an "eligible prevailing party." *Rich-*

*lin Sec. Serv. Co. v. Chertoff,* ─── U.S. ───, ───, 128 S.Ct. 2007, 2011, 170 L.Ed.2d 960 (2008) (citing 5 U.S.C. § 504(a)(1)). A "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded" and may also be termed a "successful party." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (citing BLACK'S LAW DICTIONARY 1145 (7th ed.1999)). The Supreme Court has clarified that "a 'prevailing party' is one who has been awarded some relief by the Court." *Id.*

This Court entered judgment in favor of Plaintiff in the amount of $100,000.00 on September 6, 2006. Our judgment was summarily affirmed by the Federal Circuit. Plaintiff therefore qualifies as a "prevailing party" under the EAJA. The Government does not dispute this point.

**2. The Government's Position Was Not "Substantially Justified"**

■ A prevailing party may only recover attorney fees where the Government's underlying position in the litigation was not "substantially justified." 28 U.S.C.A. § 2412(d)(1)(A); *see Scarborough v. Principi,* 541 U.S. 401, 405, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) ("the Government may defeat [an EAJA] entitlement by showing that its position in the underlying litigation 'was substantially justified.' "). The burden of establishing substantial justification rests upon the Government. *See White v. Nicholson,* 412 F.3d 1314, 1315 (Fed.Cir.2005) (*Nicholson* ). The Supreme Court has described this standard as not justified to a high degree, but rather justified in substance or in the main. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In other words, the Government's position must have been "justified to a degree that could satisfy a reasonable person." *Id.* In determining substantial justification, the Court must "look at the entirety of the [G]overnment's conduct [both prior to and during litigation] and make a judgment call whether the [G]overnment's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 715

(Fed.Cir.1991); *see also Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir.1995) ("[T]he term 'position of the United States' [in the EAJA] refers to the [G]overnment's position throughout the dispute, including not only its litigating position but also the agency's administrative position."); *Geo–Seis Helicopters, Inc. v. United States,* 79 Fed.Cl. 74, 77 (2007).

The Government's—or, more precisely, the BJA's—position in the litigation underlying this EAJA Application was not substantially justified. In our decision in *Bice I,* we found that the BJA "improperly disregarded evidence favorable to the Plaintiff" and "imposed evidentiary limitations" unsupported by the law. *Bice I,* 61 Fed.Cl. at 422. We determined that PSOBA regulations provided a much more liberal understanding of a *prima facie* case than the BJA applied in its final decision. *See, e.g., id.* at 431. We therefore reversed the BJA's final decision on Plaintiff's PSOBA claim and "remanded for consideration in light of [our] ruling." *Id.* However, rather than reconsider its decision in light of our ruling, the BJA committed prejudicial error by failing to follow our instructions on remand. *Bice II,* 72 Fed.Cl. at 442. We set aside and vacated the BJA's decision on remand on this ground. We further concluded that the BJA acted in an arbitrary and capricious manner by once again disregarding evidence favorable to Plaintiff and by imposing new impermissible evidentiary burdens on him. *Id.* We reversed and vacated the BJA redetermination on these grounds as well.

The BJA's handling of Plaintiff's PSOBA claim was unsupported by the law. Furthermore, the BJA's refusal to follow our instructions on remand was unreasonable. *See In re Wella A.G.,* 858 F.2d 725, 728 (Fed.Cir. 1988) (holding that the BJA is bound to comply with this Court's instructions on remand). The Government's position in the underlying litigation thus lacked any substantial justification.

Finally, we note that the Government has not attempted to argue that its position during litigation of Plaintiff's case was substantially justified. *See generally* Def. Opp. It is incumbent upon the Government to demonstrate substantial justification. *Nicholson,* 412 F.3d at 1315. The Government has failed to carry this burden.

### CONCLUSION

For the reasons stated herein, **we DENY the Government's Motion to Dismiss Plaintiff's EAJA Application. We hereby GRANT Plaintiff's EAJA Application in the amount of $10,037.77. The Clerk of Court is directed to enter judgment in favor of the Plaintiff in that amount.**

**IT IS SO ORDERED.**